## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FELIX BERMUDEZ and KIMBERLY
RICHARDSON, individually and on
behalf of all others similarly situated,

                Plaintiffs,

v.

COLGATE-PALMOLIVE COMPANY,

             Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Felix Bermudez and Kimberly Richardson ("**Plaintiffs**") bring this Class Action against Colgate-Palmolive Company ("**Colgate**" or "**Defendant**"), on behalf of themselves and all others similarly situated, and allege the following based on their personal knowledge and the investigation of their counsel:

### INTRODUCTION

1.      This is a consumer class action against Colgate for its false advertising, unfair and deceptive marketing practices, and materially misleading claims and omissions it employed and disseminated in connection with the sale of its line of toothpastes containing charcoal.

2.      Colgate sells oral care products containing charcoal, including the "Colgate Total Whitening + Charcoal Toothpaste" toothpaste product ("Total Charcoal") and the "Colgate Optic White with Charcoal Teeth Whitening Toothpaste" toothpaste product ("Optic Charcoal") (collectively, "**Charcoal Toothpastes**.").

3.      In recent years, health and beauty products containing charcoal have become a consumer sensation. Opportunistic marketers, celebrities and social media influencers tout a

1

variety of charcoal products for purported detoxifying properties and other enhanced well-being and health benefits. Consumers have been willing to pay a premium for these charcoal products based on these purported benefits.

4.    Colgate advertises that its "dedication to environmental responsibility and people's wellbeing fuels [its] sustainable packaging, product delivery, and the use of *safe ingredients.*"[1] Colgate further promotes itself as a brand to be trusted and relied upon by consumers in connection with their decision-making as to oral health and dental hygiene. Through its public marketing campaign, which is ubiquitous and high in volume and content, Colgate conveys a clear message that the brand is extremely conscientious and focused on health and safety. Colgate specifically states that "trust starts with the ingredients" it chooses and "every single ingredient [it uses] is completely safe for you, your family and the environment."[2]

5.    Colgate actively misleads consumers to believe the Charcoal Toothpastes are safe for enamel, and safe for everyday use and overall oral health. Indeed, Colgate promotes the Charcoal Toothpastes with uniform written promises made directly on the front labels of the Charcoal Toothpastes, including: "enamel safe" and "total mouth health." These claims speak to the purported "safety" of the Charcoal Toothpastes, specifically the "enamel safe" representation on the front of the Optic Charcoal product, and the "whole mouth health" representation on the front of the Total Charcoal product (collectively referred to herein as, the "**Safety Claims**").

6.    Indeed, Colgate was well aware that it had duties to uphold as to its marketing,

---

[1] "Sustainability." Colgate-Palmolive Company. [https://www.colgate.com/en-us/power-of-optimism/sustainable-dental-care-products] (last accessed December 16, 2021) (emphasis added).
[2] "Product Ingredients." Colgate-Palmolive Company. [https://www.colgate.com/en-us/power-of-optimism/sustainable-dental-care-products/ingredients] (last accessed December 16, 2021).

advertising and labeling of the Charcoal Toothpastes. This is in part evidenced by the fact that the Charcoal Toothpastes it develops, markets, and sells are all subject to a legal and regulatory framework over cosmetics and over-the-counter drugs.[3]

7.      Colgate's marketing strategy surrounding its Charcoal Toothpastes has been very successful. However, that success is built around messaging that is materially misleading and deceptive to consumers, lacks a factual basis, and recklessly omits material information concerning the use of charcoal in oral care products, such as the Charcoal Toothpastes.

8.      The consensus of respected dentists, researchers and industry experts weighs *against* the use of charcoal toothpastes because they are not safe to use, contrary to Defendant Safety Claims.

9.      Notably, the American Dental Association ("ADA") has not approved *any* charcoal toothpastes for its ADA Seal of Acceptance (the "ADA Seal"). The ADA Seal certifies the safety and efficacy of a dentifrice, based on clinical data and research.

10.      Colgate knew or should have known that its Safety Claims regarding the Charcoal Toothpastes were misleading, deceptive, and/or false and lacked a reasonable basis.

11.      Colgate omitted material facts, including that charcoal, when used in toothpastes, is known to be abrasive to enamel and the gums.

12.      As a result of Colgate's representations made on the labeling and marketing of the Charcoal Toothpastes, Plaintiffs and other reasonable consumers reasonably and justifiably relied upon and attributed credence and value to the asserted representations, including the Safety Claims touted on the front labels of the Charcoal Toothpastes.

13.      As a direct and proximate result of Colgate's misrepresentations, material

---

[3] Each of the Charcoal Toothpastes qualify as a cosmetic or a combination of cosmetic and over-the-counter drug, under the pertinent legal framework, as explained *infra*.

omissions and deceptive practices in its advertising and labeling, Plaintiffs and others similarly situated have suffered actual injuries from their purchase of one or more of the Charcoal Toothpastes and did not receive the full value of their purchase. Colgate successfully induced Plaintiffs and the putative class members to purchase the Charcoal Toothpastes that are not safe for enamel and everyday use as represented.

14.     Additionally, Colgate charges a price premium for the Charcoal Toothpastes over other toothpastes.

15.     By falsely advertising and deceptively misbranding its Charcoal Toothpastes to Plaintiffs and the Class in the conduct of their business, Colgate has acted unlawfully to prioritize its own profits and jeopardize consumers' dental hygiene, oral health and safety. Colgate's conduct in its advertising, labeling, and sale of the Charcoal Toothpastes was, and continues to, be substantially injurious to consumers, as well as unconscionable and in contravention of public policy.

16.     Colgate's false advertising and labeling and materially misleading claims and omissions have enabled it to sell the Charcoal Toothpastes in great quantity, which generated substantial profits for Defendant.

17.     Defendant's conduct is consumer-oriented and likely to deceive reasonable consumers and is in violation of New York consumer laws and constitutes unlawful practices in violation of Sections 349 and 350 of New York General Business Law. Defendant's conduct is also fraudulent under common law. Moreover, Defendant was unjustly enriched as result of its misconduct in selling the Charcoal Toothpastes.

18.     Plaintiffs bring this proposed class action on behalf of themselves and other similarly situated consumers throughout the United States who purchased Colgate's Charcoal

Toothpastes within the relevant statute(s) of limitations period (the "Class"). Plaintiffs seek on behalf of themselves and the members of the Class, to recover compensatory and statutory damages, treble or punitive damages as available, attorneys' fees and costs, and any other relief the Court deems appropriate.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and at least one Plaintiff is a citizen of a state different from Defendant.

20.     This Court has personal jurisdiction over Defendant. Colgate has sufficient minimum contacts with the state of New York and purposefully availed itself, and continues to avail itself, of the jurisdiction of this New York through the privilege of conducting its business ventures in the state of New York, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Colgate is a corporation with its principal place of business and headquarters in New York, New York and is thus subject to personal jurisdiction in New York.

21.     Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, Plaintiffs made their purchases of the Charcoal Toothpastes in this district, and Defendant is headquartered and conducts substantial business in this district.

## PARTIES

22.     Plaintiff Felix Bermudez ("Plaintiff Bermudez" or "Mr. Bermudez") is a natural person and a citizen of New York, residing in Manhattan. Plaintiff Bermudez purchased the Colgate Total Charcoal toothpaste at least once within the statutory period, most recently in November 2020 at a Walmart brick and mortar store in Manhattan, New York.

23.     Before purchasing the Charcoal Toothpaste, Plaintiff Bermudez reviewed product information and images, including the Safety Claims featured on the product packaging. When purchasing his Charcoal Toothpaste, Plaintiff Bermudez also reviewed the accompanying labels, disclosures, and marketing materials, and understood them as representations by Defendant that the Charcoal Toothpastes were as safe as advertised. Plaintiff Bermudez relied on these representations and the Safety Claims in deciding to purchase Charcoal Toothpastes over comparable products. Plaintiff Bermudez would not have purchased the Charcoal Toothpastes on the same terms had he known the Safety Claims were not true. In making his purchases, Plaintiff Bermudez paid a substantial price premium due to the false and misleading Safety Claims. However, Colgate's Charcoal Toothpastes are not as safe as advertised and are therefore falsely labeled. Plaintiff Bermudez also understood that in making the sale, his retailer was acting with the knowledge and approval of Defendant and/or as the agent of Colgate. Plaintiff Bermudez further understood that each purchase involved a direct transaction between himself and Colgate, because the Charcoal Toothpastes came with packaging and other materials prepared by Colgate, including representations regarding the Safety Claims.

24.     Plaintiff Kimberly Richardson ("Plaintiff Richardson" or "Ms. Richardson") is a natural person and a citizen of New York, residing in Yonkers. Plaintiff Richardson purchased the

Colgate Optic Charcoal toothpaste multiple times within the statutory period, most recently in February 2021 in Yonkers, New York.

25.     Before purchasing her Charcoal Toothpaste, Plaintiff Richardson reviewed product information and images, including the Safety Claims featured on the product packaging. When purchasing the Charcoal Toothpaste, Plaintiff Richardson also reviewed the accompanying labels, disclosures, and marketing materials, and understood them as representations by Defendant that the Charcoal Toothpastes were as safe as advertised. Plaintiff Richardson relied on these representations and the Safety Claims in deciding to purchase the Charcoal Toothpastes over comparable products. Plaintiff Richardson would not have purchased the Charcoal Toothpastes on the same terms had she known these representations were not true. In making her purchases, Plaintiff Richardson paid a substantial price premium due to the false and misleading Safety Claims. However, the Charcoal Toothpastes are not as safe as advertised and are therefore falsely labeled. Plaintiff Richardson also understood that in making the sale, her retailer was acting with the knowledge and approval of Defendant and/or as the agent of Colgate. Plaintiff Richardson further understood that each purchase involved a direct transaction between herself and Colgate, because the Charcoal Toothpastes came with packaging and other materials prepared by Colgate, including representations regarding the Safety Claims.

26.     Defendant Colgate-Palmolive Company is a Delaware corporation with its principal place of business and headquarters at 300 Park Avenue, New York, New York, 10022.

27.     Colgate markets, labels, brands, and sells the Charcoal Toothpastes throughout the United States, including New York.

28.     Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## COMMON FACTUAL ALLEGATIONS

**A.     Charcoal Historically Has Many Uses, But Not All Are Effective or Safe.**

29.     Charcoal is made from coal, wood, coconut shells, sawdust, bamboo, or similar ingredients. The raw material is superheated, treated with different chemicals, and then superheated a second time with steam.[4]

30.     Charcoal has adsorptive qualities that have proven to be quite useful in certain limited contexts. For decades, it has been used in the emergency medical treatment of certain types of poisonings and drug overdoses, because, when administered correctly, it can adsorb certain heavy metals, drugs and other toxins.[5] The effectiveness of medicinal charcoal in the emergency room setting is limited and dependent on specific factors, such as the type of drug, poison, or toxin, timing between ingestion of the toxin and ingestion of the medicinal charcoal, and dosage of each.[6]

31.     Charcoal has also been used in industrial and environmental settings to extract

---

[4] "Activated Charcoal FAQ," General Carbon Corp. [http://generalcarbon.com/facts-about-activated-carbon/activated-carbon-faq/] (last accessed December 21, 2021) (General Carbon Corp. is an activated charcoal manufacturer).
[5] *See generally*, Robert W. Derlet & Timothy E. Albertson, "Activated Charcoal—Past, Present and Future," 145 *West J. Med.* 493 (Oct. 1986) [https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1306980/pdf/westjmed00158-0063.pdf]. (last accessed December 21, 2021).
[6] *Id.*; *see also* Derlet & Alberston, *supra* note 3, at 493–92 & Table 1; Jennifer A. Lowry, "Use of Activated Charcoal in Pediatric Populations," World Health Organization: Subcommittee of Expert Committee on the Selection and Use of Essential Medicines, Jan. 2008, at 2, [https://www.who.int/selection_medicines/committees/subcommittee/2/charcoal_rev.pdf ] (reviewing literature on medical use of activated charcoal). (last accessed December 21, 2021).

certain organic and in organic substances from water.[7] For example, it is sometimes used to remove excess amounts of fluoride from drinking water.[8] It is used in juice manufacturing to control color and remove organic compounds.[9] Charcoal can also adsorb water-soluble vitamins, including forms of Vitamins C and B.[10]

32.     Charcoal was also used in ancient times for human health purposes. The first use of charcoal for oral hygiene dates back to Hippocrates in ancient Greece.[11] The Romans apparently followed this practice, along with other questionable oral care practices such as rinsing their mouths with urine.[12]

33.     In the modern age, inspired by the use of charcoal in these limited and particular contexts, enterprising companies like Defendant have been eager to extrapolate charcoal's adsorptive properties for use in a much broader context, often with little to no substantiation. Products containing charcoal are increasingly prevalent and are promoted with false, deceptive, or overstated health and beauty benefits. Charcoal has been marketed to the public as capable of extracting nearly any undesirable element or substance, and in nearly any context.

34.     Multiple scientific and consumer publications have made note of the misleading

---

[7] *See generally* "The History of Activated Carbon," Jurassic Activated Carbon, Feb. 9, 2014 [https://www.jurassiccarbon.com/blogs/news/12186281-the-history-of-activated-carbon]. (last accessed December 21, 2021).

[8] Manisha Poudyal & Sandhya Babel, "Removal of Fluoride using Granular Activated Carbon and Domestic Sewage Sludge," 82 *Int'l Proceedings of Chem., Biological, and Envtl. Eng'g* 139 (2015) [http://www.ipcbee.com/vol82/027-IEEA2015-C3024.pdf]; *see also* Behrooz Eftekhar et al., "The Effectiveness of Home Water Purification Systems on the Amount of Fluoride in Drinking Water," *J. of Dentistry, Shiraz U. of Med. Sci.*, Sept. 2015, at 278, (noting that use of home water purification systems, including several using carbon-based filtration methods, reduced the amount of fluoride in water). (last accessed December 21, 2021).

[9] Cetin Kadakal et al., "Research Note: Effect of Activated Charcoal on Water-Soluble Vitamin Content of Apple Juice," 27 *J. of Food Quality* 171 (Apr. 2004) [https://doi.org/10.1111/j.1745-4557.2004.tb00647.x]. (last accessed December 21, 2021).

[10] *Id.*

[11] *See* S.W.B. Newsom, "Hygiene and the Ancient Romans," *J. of Infection Prevention*, at 25, June 2004 [https://journals.sagepub.com/doi/abs/10.1177/14690446040050030601]. (last accessed December 21, 2021).

[12] C. Valerius Catullus, "On Egnatius of the White Teeth," circa B.C. 84–54, (Tr. Richard Francis Burton, 1894), [http://www.perseus.tufts.edu/hopper/text?doc=Perseus:text:1999.02.0005:poem%3D39] (poem by the Roman poet Catullus referring to the practice of whitening teeth by rinsing with urine). (last accessed December 21, 2021).

health and safety benefits of charcoal (particularly in its most commonly available form as an ingestible supplement). Notable excerpts include:

- "In recent years, people have tried to translate the very limited success of activated charcoal in the ER to their everyday lives, assuming that if it can adhere to and remove certain drugs in an emergency room, it can stop all kinds of toxins, making an already healthy person even healthier."[13]

- Lisa Sasson, M.S., R.D., clinical associate professor of nutrition at New York University is quoted as saying "**this logical leap is not based in science**."[14]

35.     Simultaneous with the charcoal trend, consumer demand for teeth-whitening products has risen. The global market for teeth-whitening products is expected to reach $7.4 billion by 2024.[15]

36.     Colgate has successfully leveraged the charcoal trends as well as consumer enthusiasm for teeth whitening with its development, marketing, and sales of its Charcoal Toothpastes.

**B.     Charcoal is Unsafe By Modern Scientific and Regulatory Standards.**

**1.     Contemporary studies challenge the safety and efficacy of charcoal for use in dentifrice.**

37.     In the United States, there have been several attempts to introduce charcoal as an oral health product. According to commentary published in the Journal of the American

---

[13] Julia Calderone, "Activated Charcoal Isn't a Magic Health Bullet," Consumer Reports (April 13, 2017) [https://consumerreports.org/dietary-supplements/activated-charcoal-fad-not-a-magic-health-bullet/]. (last accessed December 21, 2021).
[14] *Id*.
[15] https://www.hexaresearch.com/research-report/teeth-whitening-products-market. (last accessed December 21, 2021).

Dental Association ("JADA") in 1932, a product named "Kramer's Original Charcoal Dental Cream," had been pronounced "not acceptable" as an Accepted Dental Remedies (ADR) by the Council on Dental Therapeutics (the "Council"). The Council found that "[c]linical experiences are recorded in which the particles of charcoal became imbedded in the gum tissue and produced a bluish line near the margin, which is removable only by surgical means."[16] When the Kramer's brand produced no evidence to rebut the clinical results, the Council denied it as an ADR "because it is a dentifrice intended for daily use that contains **charcoal, a potentially harmful substance**."[17]

38.     Decades after American dentistry rejected charcoal for use in dentifrice, the topic has again resurfaced, in light of the burgeoning consumer trend. One study, presented at the Academy of General Dentistry 2015 Annual Meeting, concluded that "activated charcoal was more abrasive than a whitening toothpaste on acrylic resins" and warned that "[t]he fine black charcoal powder may become embedded in defects such as margins or cracks present on older dentition."[18]

39.     In 2017, the Journal of the American Dental Association published a literature review to "examine the efficacy and safety of charcoal and charcoal-based dentifrices." John K. Brooks et al., *Charcoal and Charcoal-Based Dentifrices*, 148 JADA 661 (2017) (referred to herein as "*Charcoal-Based Dentifrices* (JADA 2017)" or "the 2017 JADA article"). The authors, Dr. John Brooks, DDS, Dr. Nasir Bashirelahi, PhD, and Dr. Mark A. Reynolds, DDS, PhD, reviewed the first 50 consecutive charcoal dentifrices from Google.com and Amazon.com to

---

[16] John K. Brooks et al., "Commentaries: More on Charcoal and Charcoal-Based Dentifrices," 148 JADA 785 (2017), [http://dx.doi.org/10.1016/j.adaj.2017.09.027] (quoting S.M. Gordan, "Kramer's Original Charcoal Dental Cream: not acceptable for A.D.R.," 33 *JADA* 912, 912–13 (1946)).

[17] *Id.* (emphasis added).

[18] Brantley McCarty et al., "Activated Charcoal as a Whitening Dentifrice," Presented at Academy of General Dentistry 2015 Annual Meeting, June 18–21, 2015, San Francisco, CA [https://www.epostersonline.com/agd2015/node/72] (last accessed December 21, 2021).

assess how the marketing claims of these products compared with efficacy and safety of charcoal-based dentifrices as found in the available scientific literature.[19]

40.     The findings of the 2017 JADA article state that there is no scientific support for a "detoxifying" effect of charcoal[20]; it is abrasive on teeth and gingiva[21]; and any inclusion of fluoride for health is counteracted and rendered moot by the inclusion of charcoal[22].

41.     In short, there was little evidence that charcoal-based toothpastes offered any cosmetic or health benefits and were as safe as marketers touted.[23]

42.     A later publication in May 2019 in the British Dental Journal confirmed that supporting scientific evidence remained lacking, and again raised the same and similar concerns reflected in the 2017 JADA article. Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 BDJ 697, 698 (2019) (referred to herein as "*Charcoal-Containing Dentifrices* (BDJ 2019)" or "the 2019 BDJ article").

43.     The 2019 BDJ article considered charcoal dentifrices to be a "gimmick"[24] and said that marketing of such products was "worrying." [25]

44.     The conclusions of the 2019 BDJ article about dentifrices containing charcoal mass marketed to the public are neatly summed up by the following:

> "[T]he ethics of such an approach to the marketing of health-influencing products is at best questionable. False and deceptive messaging, together with the selective provision of information could be classed as misleading practice, contrary to the consumers' best interests and protection."[26]

---

[19] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[20] *Id.* (emphasis added). The authors were unable to identify any randomized, controlled clinical trials with a follow-up duration of 3 months or longer testing the safety or effectiveness of charcoal-based dentifrices. All of the available studies lacked adequate controls to measure clinical oral improvements with charcoal-based dentifrices.
[21] *Id.* (emphasis added).
[22] *Id.* (emphasis added).
[23] *Id.* (emphasis added).
[24] Linda H. Greenwall *et al.*, "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, 698 (2019).
[25] *Id.*
[26] *Id.* (emphasis added).

**2.      The American Dental Association Has Not Approved any Charcoal Toothpaste for its ADA Seal of Acceptance.**

45.      The American Dental Association ("ADA") was founded in 1859.[27] Per the ADA's description of its mission, the ADA "exists to power the profession of dentistry and to assist our members in advancing the overall oral health of their patients."[28] ADA presents itself as a "strong advocate[] for public health" working with an aim to keep patients "healthy from the dental chair to daily care at home." [29]

46.      In furtherance of the ADA's public health goals, the organization administers the ADA Seal of Acceptance Program ("Seal Program"), which began in 1931.[30] The ADA established its Seal Program to combat "extravagant claims" about what dental products could do.[31] Since that time, the ADA Seal of Acceptance has become "[u]niversally recognized by consumers as a symbol of safety and effectiveness" and "is carried on more than 300 oral health products, including toothpastes, toothbrushes, dental floss, mouth rinses, denture adherents, and chewing gum."[32]

47.      Significantly, the ADA has not granted the ADA Seal of Acceptance to any product with charcoal, including the Charcoal Toothpastes.[33]

48.      However, Colgate *has* received the ADA Seal of Acceptance for other oral care products it has developed, marketed and sold to consumers, including the following products: "Colgate Cavity Protection Gel & Toothpaste," "Colgate for Kids Toothpaste," "Colgate Kids

---

[27] https://www.ada.org/en/about-the-ada/ada-history-and-presidents-of-the-ada (last accessed December 21, 2021).
[28] https://www.ada.org/en/about-the-ada (last accessed December 14, 2021).
[29] *Id.*
[30] https://www.ada.org/en/science-research/ada-seal-of-acceptance (last accessed December 14, 2021).
[31] https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-faq, "What is the ADA Seal?" (last accessed December 14, 2021).
[32] https://www.ada.org/en/about-the-ada (last accessed December 14, 2021).
[33] *See* https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-shopping-list (last accessed December 14, 2021).

Maximum Cavity Protection," "Colgate Kids Zero Fluoride Toothpaste," "Colgate Sensitive Prevent and Repair Toothpaste," and "Colgate Total SF Toothpaste (Fresh Mint Stripe, Whitening, Deep Clean, and Clean Mint)."[34]

49.     Based upon the prevailing scientific literature and the known risks and abrasiveness of charcoal, coupled with Colgate's prior experience with the ADA Seal Program, Colgate was or should have been aware of the unsuitability of the ADA Seal of Acceptance for its Charcoal Toothpastes. Nevertheless, it has chosen to make the exact sort of false, deceptive, and/or misleading claims that inspired the creation of the ADA's Seal Program.

## C.     Colgate Knowingly Misleads Consumers with Misrepresentations Concerning Safety and Efficacy in its Charcoal Toothpastes.

### 1.     Colgate's Representations on the Charcoal Toothpastes' Labeling, Packaging, Advertising, and Marketing.

50.     Since at least 2015, Colgate has packaged, marketed, distributed, and sold some or all of its Charcoal Toothpastes.[35] Examples of the external cardboard boxes, product packaging and tubes include:

---

[34] *See* https://www.ada.org/resources/research/science-and-research-institute/ada-seal-of-acceptance/product-search#sort=%40productname%20ascending&f:@companyname=[Colgate-Palmolive%20Co.] (last accessed December 14, 2021).

[35] https://www.colgate.com/en-in/oral-health/teeth-whitening/the-evolution-of-charcoal (last accessed December 17, 2021)



51.     The above packaging bears representations right on the Charcoal Toothpastes'

front label such as "**enamel safe**" and "**total mouth health**."

52.     Printed on the external cardboard packaging of the Charcoal Toothpastes is the

following:



15







53.     Featured predominantly in the printed labeling of the tubes and cardboard packaging for the Charcoal Toothpastes are the claims: "Enamel Safe" and/or "Total Mouth Health."

54.     The following claims are printed on the external cardboard packaging of the Optic Charcoal:

16

- **"Enamel Safe."**

55.     The following claims are printed on the external cardboard packaging of the Total Charcoal product:

- **"Total mouth health."**

56.     Colgate continues to make misrepresentations on its website regarding the Charcoal Toothpastes, as well as the purpose and benefits of activated charcoal in its oral care products:

- "It not only offers the benefits of regular toothpaste but also refreshes and whitens teeth by gently removing surface stains."[36]
- "This charcoal whitening toothpaste is good for daily use, enamel safe, and the fluoride toothpaste provides protection against cavities."[37]
- "It uses our clinically proven micro-polishing whitening technology to safely remove surface stains."[38]

57.     Colgate's website also includes a short article titled "Charcoal Toothpaste: What Is It and Does It Work?"[39] In this article, Colgate does not talk about the risks of charcoal for use in dentifrices, but deflects those claims, citing with a broad stroke the "insufficient evidence" brought forward for those claims. With regard to Colgate's use of charcoal, Colgate writes:

> "There may be many charcoal toothpaste benefits, but if you're prone to tooth decay, be aware that not all of these kinds of toothpaste will contain fluoride. Since most dentists want their patients to use fluoride in some form, your dentists may recommend a fluoride rinse that helps strengthen your enamel as an adjunct to your charcoal toothpaste."

---

[36] *https://www.colgate.com/en-us/products/toothpaste/colgate-total-whitening-charcoal-paste* (last accessed December 14, 2021).
[37] https://www.colgate.com/en-us/whitening-hub/products/ow-charcoal (last accessed December 16, 2021)
[38] Id
[39] https://www.colgate.com/en-us/oral-health/selecting-dental-products/charcoal-toothpaste-what-is-it (last accessed December 14, 2021).

58.     Nothing in this article provides any indication of risk when using charcoal as a component in itself.

59.     Colgate's website representations further paint the picture of deception to all reasonable consumers that the Charcoal Toothpastes are safe when used as intended. But the truth is, Colgate's representations are not true.

**2.     The Claimed Safety of the Charcoal Toothpastes is Materially Misleading and Debunked by Scientific Evidence, Impossible, and/or Untrue.**

60.     On its website, Colgate states: "This charcoal whitening toothpaste is good for daily use, enamel safe, and the fluoride toothpaste formula provides protection against cavities."[40] In addition to "It not only offers the benefits of regular toothpaste but also refreshes and whitens teeth by gently removing surface stains."[41] Colgate bombards consumers with 'fresh' and 'safe' messaging intended to leave a strong impression that the brand is *extremely* conscientious of health, safety, and wellbeing.

61.     While proclaiming that the Charcoal Toothpastes are safe for enamel and safe for everyday use and overall oral health, Colgate also fails to disclose material facts, such that charcoal has *not* been deemed as safe for use in charcoal toothpastes, and both JADA and the BDJ have confirmed insufficient scientific evidence to substantiate safety claims (as well as cosmetic and health benefits) as well as raised concerns about risks associated with the use of charcoal dentifrices.

62.     Charcoal is known to be a highly abrasive and harmful substance to tooth enamel.[42] Multiple scientific studies have noted its abrasiveness presents a risk to enamel and

---

[40] https://www.colgate.com/en-us/whitening-hub/products/ow-charcoal (last accessed December 16, 2021).
[41] https://www.colgate.com/en-us/products/toothpaste/colgate-total-whitening-charcoal-paste (last accessed December 14, 2021).
[42] *See, e.g.*, John K. Brooks et al., "Commentaries: More on Charcoal and Charcoal-Based Dentifrices," 148

gingiva in the context of oral care products. As noted in the 2017 JADA article: "[c]harcoal has been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concern about damages to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel."[43] The 2019 BDJ article again noted the risk to enamel and gingiva posed by charcoal's abrasiveness.[44]

63.     Moreover, the abrasive damage to tooth enamel caused by charcoal can set the stage for additional oral health issues. It has been shown that increased surface roughness of teeth creates an environment conducive to increased bacteria in the oral cavity. This, in turn, can lead to other problems and is correlated with high caries (also known as "cavities") and periodontal disease.

### D.    Colgate Knew or Should Have Known its Material Representations and Omissions on Oral Hygiene Benefits and Safety were Misleading, Deceptive and/or False.

77.     Colgate's Charcoal Toothpastes are subject to a federal legal and regulatory framework concerning the marketing, advertising, branding, and labeling of drugs and cosmetics. (Toothpastes and other dentifrices are classified as cosmetics, drugs, or a combination thereof.). As a purveyor of regulated oral care products, making various claims as to safety, oral health, cosmetic effects, and even some medicinal and disease-prevention claims, Colgate knew or should have known of its duties under such regulations. Indeed, as previously discussed, Colgate has undergone the rigorous process to obtain an ADA Seal on some of its products (but has not done so for any of its charcoal products). Many of Colgate's misleading

---

*JADA* 785 (2017) [http://dx.doi.org/10.1016/j.adaj.2017.09.027] (quoting S.M. Gordan, "Kramer's Original Charcoal Dental Cream: not acceptable for A.D.R.," 33 *JADA* 912, 912–13 (1946)) (Concluding a charcoal dental cream was not an acceptable dental remedy "because it is a dentifrice intended for daily use that contains charcoal, a potentially harmful substance").

[43] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).

[44] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, (2019).

and deceptive practices as to the Charcoal Toothpastes were prohibited by federal and state regulations, of which Colgate was certainly aware.

78.     The Federal Trade Commission Act (15 U.S.C. § 41 *et seq*.) ("FTC Act"), as well as the Federal Food, Drug and Cosmetic Act (21 U.S.C. §321 *et seq*.) ("FD&C Act"), the Fair Packaging and Labeling Act (15 U.S.C. §1451 *et seq*.) ("FP&L Act") and the regulatory frameworks and rules created thereunder impose obligations on marketers and distributors such as Colgate. These federal laws were created in the aim to protect consumers from unfair and deceptive practices (including unsafe or deceptively labeled or packaged products), as well as to protect against unfair competition. Similarly, multiple state laws have statutes that incorporate and/or mirror pertinent portions of federal regulatory framework.

79.     Plaintiffs acknowledge Colgate's obligations and duties under this federal framework and under parallel state frameworks for purposes related to the elements of the common law and state statutory causes of action asserted herein (such as the existence of various legal duties and obligatory standards of care, the existence of a special relationship, as well as to underscore that Colgate knew or should have known of its noncompliance and that its conduct was wrongful). Plaintiffs expressly disclaim any attempt to hold Colgate to a higher standard than that which is required under federal law and does not seek relief or remedy for conduct to a standard exceeding that which is required under federal law.[45]

80.     Defendant was, or should have been, aware of its obligations under the above-

---

[45] The allegations concerning conduct that violates the FD&C Act, the FTC Act, regulations thereunder, and/or other parallel state laws and regulations, as raised herein, are properly asserted in the context of the causes of action and relief sought herein and are not barred by preemption. *See, e.g., Reid v. GMC Skin Care USA Inc.,* No. 15-CV-277, 2016 WL 403497, *10 (N.D.N.Y. Jan. 15, 2016) ("Plaintiffs' claims, if proven to be true, would simply require Defendant to truthfully state the efficacy of its products or not sell its products; such relief would not impose a state requirement that is different from or in addition to, or that is otherwise not identical with that of the FDCA.").

described legal and regulatory framework; yet, Colgate appears to have disregarded its duties as to its Safety Claims and overall marketing and advertising, as well as to product packaging and labeling. This further underscores that Colgate knew or should have known its acts and practices were also unlawful under state consumer protection laws.

81.     Colgate also knew, or should have known, that the Charcoal Toothpastes did not possess the promised benefits and safety, and that there was risk of harm. Scientific studies and journals that contradicted many of Colgate's claims were published and available to Colgate at the time it disseminated its claims and marketing content.

82.     Moreover, Colgate would not have even had to look to academic or scientific resources, because the scientific findings were also reported in consumer reports and mainstream media outlets both before and during the time the Charcoal Toothpastes were developed, marketed, and sold. Examples include:

- ABC News, June 2017, *How Safe is Activated Charcoal?* reports concerns of Dr. Upen Patel, D.D.S., because charcoal dentifrices are not evaluated by the ADA for long term use, can erode enamel, abrasiveness, gums, and tissue, and the small charcoal particles "can get stuck in your gums and in small cracks in your teeth, so you can have these little black lines in your gums and your teeth you can't get out."[46]

- BBC, May 2019, *Charcoal Toothpastes 'don't whiten teeth,'* cited the British Dental Journal for the premise that "charcoal-based toothpastes, which claim to whiten teeth, are a 'marketing gimmick' which could increase the risk of tooth decay," and are "more abrasive than regular toothpastes, potentially posing a risk to the enamel and gums." The article quoted Dr. Greenwall-Cohen as stating that charcoal particles in toothpastes can "get caught up in the gums and irritate them," and also be problematic for fillings.[47]

- Harper's Bazaar, August 2018, *Is Charcoal Toothpaste Safe to Use*? (re-published in September 2020), reported on the doubts and issues raised by the British Dental Journal, noting, "[u]nlike your liver and kidneys, the teeth and gums don't perform a detoxifying function of the body, and since so-called toxins aren't generally hanging out in your

---

[46] Irene Cruz, "How Safe Is Activated Charcoal?," ABC 10 (June 9, 2017)
[https://www.abc10.com/article/news/local/how-safe-is-activated-charcoal/447456019].
[47] "Charcoal Toothpastes 'don't whiten teeth,'" BBC: Health, May 10, 2019
[https://www.bbc.com/news/health-48216116].

mouth anyway, there's not much point in using your tooth cleaning to purge them."[48]

- Dr. Ada Cooper, DDS, spokesperson for the American Dental Association, warned of charcoal toothpastes in *Beware Whitening Promise of Charcoal Toothpastes* in March 2019: "Just because something is popular doesn't mean it's safe." "Charcoal is recognized as an abrasive material to teeth and gums." "Using materials that are too abrasive can actually make your teeth look more yellow, because it can wear away the tooth's enamel and expose the softer, yellower layer called dentin."[49]

83.     It is entirely implausible that Colgate, an industry leader in oral care products that possessed particularly sophisticated marketing savvy and invested significant time, money and effort into the marketing of its products, failed to notice reported concerns from the ADA and other dental professionals and experts, researchers within the scientific community, and the media that the safety of charcoal dentifrices were wholly unsubstantiated, and their use was highly risky to consumers' oral health and dental hygiene. (Unlike consumers, whose attention to the claims of the oral care industry will likely be limited to time in a shopping aisle looking at product packaging, or at online retail sites that present a company's marketing claims.)

84.     Indeed, Colgate was under a continuing duty to warn if its product poses a risk, and its duty could be triggered by new information.

**E.     Colgate Intended Consumers' Reliance and Induced Consumers' Purchase of the Charcoal Toothpastes.**

85.     Colgate's advertising and marketing scheme was constructed in order to induce consumers, including Plaintiffs and all reasonable consumers, to purchase the Charcoal Toothpastes over other products, and to do so at a price premium.

86.     The Safety Claims at issue – which are alleged herein as misleading, inaccurate,

---

[48] Lauren Hubbard & Alexandra Tunell, "Is Charcoal Toothpaste Safe to Use?," Harper's Bazaar, Aug. 14, 2018 (updated: Harper's Bazaar Staff, "Is Charcoal Toothpaste Safe to Use?," September 23, 2020) [https://www.harpersbazaar.com/beauty/health/advice/a3764/charcoal-toothpaste-pros-cons/].
[49] The Family Dental Center, Mar. 2019, "Beware Whitening Promise of Charcoal Toothpastes," [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/].

and/or false, as well as lacking a proper factual basis – are material to a consumer's decision whether to purchase them. Colgate recklessly and/or intentionally fails to disclose material information that, if known to a consumer, would inform their perception of the claims affirmatively made, and would affect the purchase decision. The misrepresentations and omissions also have potentially serious consequences on consumers' oral health and dental hygiene, simply as a result of the intended use.

87.     Colgate made the Safety Claims which it knew average consumers were unequipped to assess, and were relying on and placing their trust in. Colgate persistently claimed superiority over other brands in terms of quality and safety of ingredients.

88.     Colgate has also used its deceptive advertising practices to fraudulently induce consumers to purchase and pay a premium price for its Charcoal Toothpastes.

89.     Colgate continues to promote and hype the attributes of charcoal, including the Safety Claims. It does so despite warnings from dentists and the scientific community about charcoal dentifrices – at best a "marketing gimmick" and, at worst, harmful to teeth, dentistry implants and overall oral health.

90.     Colgate's misleading claims, material omissions, and its false and deceptive marketing campaign are materially misleading and likely to deceive (and have deceived) consumers and are intended to induce reliance and the purchase of one or more of the Charcoal Toothpastes.

**F.     Consumers' Reliance on Colgate's Misrepresentations was Reasonable and Justified.**

91.     Each and every purchaser of the Colgate Charcoal Toothpastes, including Plaintiff Bermudez and Plaintiff Richardson and putative Class members, were exposed to Defendant's uniform Safety Claims. Indeed, the Safety Claims are printed right on the front of

the Charcoal Toothpastes' external cardboard packaging and product labeling – clearly visible to Plaintiffs and all reasonable consumers.

92.    Consumers reasonably relied on the oft-repeated Safety Claims that the Charcoal Toothpastes had, as well as other dental hygiene and cosmetic benefits; that they were safe for enamel, and safe for everyday use and overall oral health.

93.    Plaintiffs, putative Class members, and consumers at large have been harmed by Colgate's false, misleading and deceptive representations because they purchased the Colgate Charcoal Toothpastes that were not as represented, in that they did not provide the promised benefits, properties, and characteristics, as well as a level of safety. They were also ineffective as dentifrice and/or harmful.

94.    Plaintiffs and purported class members paid a premium price for the mislabeled and falsely advertised Charcoal Toothpastes, and such premium can be directly and clearly tied to the inclusion of the charcoal ingredient, and the hyped Safety Claims Colgate made.. The premium would not have been paid but-for Colgate's misrepresentations on the unproven and harmful ingredient - charcoal.[50]

95.    In addition to the economic injury in the form of a price premium paid for falsely promised benefits, consumers have been damaged by the total purchase price, because they purchased the Charcoal Toothpastes that do not provide the basic safety and oral health maintenance that otherwise similar non-charcoal toothpastes do.

96.    Consumers were damaged by the entire cost of a tube of the Charcoal Toothpaste that was falsely labeled with the Safety Claims.

---

[50] Each consumer has been exposed to the same or substantially similar misleading and unlawful practices and each product contains identical or substantially similar claims, and each of the Charcoal Toothpastes were sold at a price premium. As such, each consumer suffered the same or substantially similar injuries as Plaintiffs, irrespective of which particular Charcoal Toothpaste they purchased.

97.     Colgate has collected substantial profits as a result of numerous material omissions and false and misleading claims over the benefits and safety of charcoal in the Charcoal Toothpastes, and other purported attributes that were false and misleading.

98.     Defendant should not be permitted to retain its substantial benefit obtained from its injurious misconduct, which in justice and equity belong to Plaintiffs and members of the Class, and caused them injury; nor should Defendant be permitted to continue to benefit from its unfair and deceptive practices and its unjust enrichment.

**G.     Plaintiffs Relied Upon the Charcoal Toothpastes' Labels to Purchase and Use the Charcoal Toothpastes.**

99.     Mr. Bermudez read and relied on the marketing and packaging that represented charcoal as having unique properties that added a special value, and he would not have purchased the Charcoal Toothpaste but-for the fact that it contained charcoal, the inclusion and purported benefits for which he paid a price premium.

100.     Mr. Bermudez expected that the Charcoal Toothpaste would meet Colgate's own representations (made on the product itself and online), including the Safety Claims.

101.     He purchased the Charcoal Toothpastes based on Colgate's Safety Claims. Indeed, Plaintiff Bermudez expected that the Charcoal Toothpaste would safely meet dental hygiene and oral health care needs.

102.     However, after a period of use, Mr. Bermudez's expectations concerning the safety of the Charcoal Toothpaste was not met. For example, rather than safely cleaning his teeth, the Charcoal Toothpaste was actually abrading his enamel and cracking his front teeth.

103.     Plaintiff Bermudez suffered the out-of-pocket purchase price for the falsely advertised and misbranded Charcoal Toothpastes. His payment also reflects and included a price premium over other products sold by Colgate that do not contain charcoal. The Charcoal

Toothpaste purchased by Plaintiff Bermudez did not and could not deliver the promised benefits and lacked the represented level of safety, and use of the Charcoal Toothpaste poses some risk and is potentially detrimental to oral health and aesthetics.

104.     Ms. Richardson read and relied on the marketing and packaging that represented charcoal as having unique properties that added a special value, and she would not have purchased the Charcoal Toothpaste but-for the fact that it contained charcoal, the inclusion and purported benefits for which she paid a price premium.

105.     Ms. Richardson expected that the Charcoal Toothpaste would meet Colgate's own representations (made on the product itself and online), including the Safety Claims.

106.     She purchased the Charcoal Toothpastes based on Colgate's Safety Claims. Indeed, Plaintiff Richardson expected that the Charcoal Toothpaste would safely meet dental hygiene and oral health care needs.

107.     However, after a period of use, Ms. Richardson's expectations concerning the safety of the Charcoal Toothpaste was not met. For example, rather than safely cleaning her teeth, the Charcoal Toothpaste was actually abrading her enamel, and is otherwise not safe for use.

108.     Plaintiff Richardson suffered the out-of-pocket purchase price for the falsely advertised and misbranded Charcoal Toothpastes. Her payment also reflects and included a price premium over other products sold by Colgate that do not contain charcoal. The Charcoal Toothpaste purchased by Plaintiff Bermudez did not and could not deliver the promised benefits and lacked the represented level of safety, and use of the Charcoal Toothpaste poses some risk and is potentially detrimental to oral health and aesthetics.

## ESTOPPEL FROM PLEADING AND
## TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

109.     Plaintiffs and members of the Class are within the applicable statute of limitation for the claims presented herein. Colgate has knowledge and information detailing the Charcoal Toothpastes' true nature regarding their own safety, but failed to disclose this information to consumers, and Plaintiffs and members of the Class therefore could not reasonably have known that the Charcoal Toothpastes are enamel safe or promote total mouth health. Rather, consumers relied upon Colgate's misrepresentations, including the statements on the Charcoal Toothpastes' labeling as set forth above.

110.     Once Plaintiffs incurred damages, they promptly acted to preserve their rights by filing this action. Colgate is estopped from asserting any statute of limitation defense that might otherwise be applicable to the claims asserted herein.

## FED. R. CIV. P. 9(b) ALLEGATIONS

111.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirement of Rule 9(b) by establishing the following elements with sufficient particularity.

112.     **WHO**: Colgate made material misrepresentations and/or omissions of fact in its labeling and marketing, in the form of the Safety Claims, of the Charcoal Toothpastes as to demonstrate that they are safe for use as intended.

113.     **WHAT**: Colgate's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Charcoal Toothpastes were safe for enamel and safe for everyday use and overall oral health.  Undisclosed by Colgate to Plaintiffs

27

and Class Members and therefore unknown to Plaintiffs and Class Members, the Charcoal Toothpastes' inclusion of charcoal necessarily makes the dentifrices unsafe for enamel and prevents them from promoting total mouth health or being safe for everyday use and overall oral health. Colgate knew or should have known this information is material to the reasonable consumer and impacts the purchasing decision, and yet it omits a necessary warning that the Charcoal Toothpastes are not entirely safe for enamel and cannot promote total mouth health.

114.    **WHEN**: Colgate made material misrepresentations and/or omissions detailed herein continuously throughout the applicable Class periods.

115.    **WHERE**: Colgate's material misrepresentations and/or omissions were made on the labeling and packaging of its Charcoal Toothpastes, which are sold nationwide and are visible to the consumer on the front of the labeling and packaging of the Charcoal Toothpastes at the point of sale in every transaction.

116.    **HOW**: Colgate made written misrepresentations and/or failed to disclose material facts regarding the true risks of normal, intended use of the Charcoal Toothpastes.

117.    **WHY**: Colgate engaged in the material misrepresentations and/or omissions detailed herein for the express purposed of inducing Plaintiffs and other reasonable consumers to purchase and/or pay a premium for the Charcoal Toothpastes. Colgate profited by selling the Charcoal Toothpastes to at least thousands of consumers nationwide.

## CLASS ACTION ALLEGATIONS

118.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to the Class Action Fairness Act ("CAFA") and Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiffs bring this action and seek certification of the

following proposed Classes:

**Nationwide Class:** All persons or entities within the United States who purchased one or more of Colgate's Charcoal Toothpastes[51] for personal use and not for resale from the beginning of any applicable limitations period through the date of preliminary approval (the "Nationwide Class" or the "Class").

**Consumer Fraud Multi-State Class:** All persons or entities in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who purchased one or more of Colgate's Charcoal Toothpastes for personal use and not for resale from the beginning of any applicable limitations period through the date of preliminary approval (the "Consumer Fraud Multi-State Class").[52]

**New York Sub-Class:** All persons or entities in New York who purchased one or more of Colgate's Charcoal Toothpastes for personal use and not for resale from the beginning of any applicable limitations period through the date of preliminary approval (the "New York Sub-Class").

119.    Excluded from the proposed Classes are the Defendant, and any entities in which the Defendant has a controlling interest, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiffs' counsel, their staff members, and their immediate family.

120.    Plaintiffs reserve the right to amend the Class definitions or add a Class if discovery and/or further investigation reveal that the Class definitions should be narrowed, expanded or otherwise modified.

121.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same

---

[51] As previously defined herein.

[52] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code. §19.86.010, *et seq.*).

claims.

122.     **Numerosity – Federal Rule of Civil Procedure 23(a)(a)**: The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to hundreds of thousands. The number of members of the Classes is presently unknown to Plaintiffs but may be ascertained from Defendant's books and records.  Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

123.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**: Common questions of law and fact exist as to all members of each of the Classes. and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

     a.     Whether, in its product packaging, labeling, marketing, advertising, and/or sale of the Charcoal Toothpastes, Defendant made materially misleading representations and material omissions;

     b.     Whether Colgate's false and misleading statements, including the Safety Claims concerning the Charcoal Toothpastes and its concealment of material facts concerning the Charcoal Toothpastes were likely to deceive reasonable consumers;

     c.     Whether the Safety Claims made by Defendant on the Charcoal Toothpastes caused consumers to pay a higher price than they otherwise would;

     d.     Whether the acts and omissions of Defendant violated Section 349 or 350 of the New York General Business Law;

     e.     Whether the acts and omissions of Defendant violated the state consumer protection statutes asserted herein;

     f.     Whether Defendant was unjustly enriched by the sale of the Charcoal Toothpastes and the profits earned therefrom should be disgorged; and

     g.     Whether the actions of Defendant warrant punitive damages.

124.     Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiffs seek to enforce on behalf of themselves and the other Members of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

125.     **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiffs' claims are typical of the claims of the other Members of the Classes because, among other things, all Members of the Classes were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiffs or to any particular Members of the Classes.

126.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Members of the Classes they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and they will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and the undersigned counsel.

127.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing

incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

128.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Classes to individually seek redress for Defendant's wrongful conduct.  Even if Members of the Classes could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### CAUSES OF ACTION

### COUNT I
### Unjust Enrichment
### (On Behalf of the Nationwide Class)

129.     Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

130.     Plaintiffs bring this count against Defendant on behalf of themselves and the Nationwide Class.

131.     Plaintiffs and the other Members of the Nationwide Class conferred benefits on Defendant by purchasing the Charcoal Toothpastes based on Defendant's Safety Claims.

132.     Defendant received the benefits to the detriment of Plaintiffs and the other Members of the Nationwide Class because Plaintiffs and the other Members of the Nationwide Class purchased mislabeled Charcoal Toothpastes that are not what they bargained for and that did not provide any of the promised benefits as advertised by Defendant.

133.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Charcoal Toothpastes by Plaintiffs and the other Members of the Nationwide Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Charcoal Toothpastes was misleading to consumers, which caused injuries to Plaintiffs and the other Members of the Nationwide Class, because they would have not purchased the Charcoal Toothpastes had they known the true facts.

134.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other Members of the Nationwide Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the other Members of the Nationwide Class for their unjust enrichment, as ordered by the Court.

## **COUNT II**
### **Violation of the State Consumer Fraud Acts**
### **(On Behalf of the Consumer Fraud Multi-State Class)**

135.     Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

136.     Plaintiffs bring this count against Defendant on behalf of themselves and the Consumer Fraud Multi-State Class.

137.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class[53] prohibit the use of unfair or deceptive business practices in the conduct of trade or

---

[53] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et*

commerce.

138.     Plaintiffs and the other Members of the Consumer Fraud Multi-State Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class because Plaintiffs and Members of the Consumer Fraud Multi-State Class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

139.     Defendant engaged in unfair and/or deceptive conduct by, *inter alia*, making Safety Claims regarding the Colgate Charcoal Toothpastes.

140.     Defendant intended that Plaintiffs and each of the other Members of the Consumer Fraud Multi-State Class would rely upon their unfair and deceptive conduct and a reasonable consumer would in face be misled by this deceptive conduct described above, including the Safety Claims.

141.     Each of the Members of the Consumer Fraud Multi-State Class relied upon Defendant's unfair and deceptive conduct alleged herein in purchasing the Colgate Charcoal Toothpastes containing the Safety Claims.

142.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other Members of the Consumer Fraud Multi-State Class have sustained damagers in an amount to be proven at trial.

143.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

---

*seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code. §19.86.010, *et seq.*).

**COUNT III**
**Violation of the New York Deceptive Trade Practices Act,**
**New York Gen. Bus. Law § 349, *et seq.***
**(In the Alternative to Count II and on behalf of the New York Sub-Class)**

144.     Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

145.     Plaintiffs bring this count in the alternative to Count II on behalf of themselves and the New York Sub-Class.

146.     By reason of the acts set forth above, Defendant has been and is engaged in deceptive acts or practices in the conduct of a business, trade, or commerce in violation of New York's General Business Law § 349.

147.     Defendant engaged in unfair and/or deceptive conduct by, *inter alia*, making the Safety Claims regardingthe Colgate Charcoal Toothpastes..

148.     The public is likely to be damaged because of Defendant's deceptive trade practices or acts. Specifically, Defendant's false, deceptive, or misleading statements implicate the health and safety (in the form of the Safety Claims) of those consumers deceived by Defendant.

149.     Defendant directs its conduct at consumers, as Defendant's false, deceptive, or misleading statements are contained in marketing targeted toward consumers, including retail product packaging. As such, Defendant's conduct as alleged herein is consumer oriented.

150.     Defendant's deceptive acts are likely to mislead a reasonable consumer acting reasonably under the circumstances.

151.     Defendant's deceptive acts affect the public interest in the state of New York because, upon information and belief, consumers located in New York have purchased Defendant's Products in reliance on Defendant's false, deceptive, or misleading statements.

152.    As a result of Defendant's use of employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other Members of the New York Sub-Class have sustained damages in an amount to be proven at trial.

**COUNT IV**
**Violation of the New York Deceptive Trade Practice Act,**
**New York Gen. Bus. Law § 350, *et seq.***
**(In the Alternative to Count II and on behalf of the New York Sub-Class)**

153.    Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

154.    Plaintiffs bring this count in the alternative to Count II on behalf of themselves and the New York Sub-Class.

155.    Defendant has made material, false or misleading statements or representations of fact about the Products. Specifically, Defendant has literally, impliedly, or by necessary implication made the Safety Claims regarding the Colgate Charcoal Toothpastes.

156.    Defendant's acts constitute false advertising in the conduct of business, trade, or commerce, or in the furnishing of any service in the state of New York in violation of New York's General Business Law § 350.

157.    The public is likely to be damaged because of Defendant's deceptive trade practices or acts. Specifically, Defendant's false or misleading statements implicate the health and safety (in the form of the Safety Claims) of those consumers deceived by Defendant.

158.    As such, Defendant's conduct as alleged herein is consumer oriented.

159.    As a result of Defendant's material, false or misleading statements or representations of fact about the Products, Plaintiffs and each of the other Members of the New York Sub-Class have sustained damages in an amount to be proven at trial.

**COUNT V**
**Fraud**
**(On Behalf of the Nationwide and/or Multi-State Class and/or the New York Sub-Class)**

160.    Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

161.    Plaintiffs bring this count on behalf of themselves, the Nationwide Class and/or Multi-State Class and/or the New York Sub-Class against Defendant, Colgate.

162.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

      a.  **WHO:** Colgate made material misrepresentations and/or omissions of fact in its labeling and marketing, in the form of the Safety Claims, regarding the Charcoal Toothpastes as to demonstrate that they are safe for use as intended.

      b.  **WHAT:** Colgate's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Charcoal Toothpastes that they were safe for enamel and safe for everyday use and overall oral health. Undisclosed by Colgate to Plaintiffs and Class Members and therefore unknown to Plaintiffs and Class Members, the Charcoal Toothpastes' inclusion of charcoal necessarily makes the dentifrices unsafe for enamel and prevents them from promoting total mouth health or being safe for everyday use and overall oral health. Colgate knew or should have known this information is material to the reasonable consumer and impacts

the purchasing decision, and yet it omits a necessary warning that the Charcoal Toothpastes are not entirely safe for enamel and cannot promote total mouth health.

c. **WHEN:** Colgate made material misrepresentations and/or omissions detailed herein continuously throughout the applicable Class periods.

d. **WHERE:** Colgate's material misrepresentations and/or omissions were made on the labeling and packaging of its Charcoal Toothpastes, which are sold nationwide and are visible to the consumer on the front of the labeling and packaging of the Charcoal Toothpastes at the point of sale in every transaction.

e. **HOW:** Colgate made written misrepresentations and/or failed to disclose material facts regarding the true risks of normal, intended use of the Charcoal Toothpastes.

f. **WHY:** Colgate engaged in the material misrepresentations and/or omissions detailed herein for the express purposed of inducing Plaintiffs and other reasonable consumers to purchase and/or pay a premium for the Charcoal Toothpastes. Colgate profited by selling the Charcoal Toothpastes to at least thousands of consumers nationwide.

163.     As alleged herein, Colgate made these material representations and omissions regarding the Safety Claims in order to induce Plaintiffs and Class Members to purchase the Charcoal Toothpastes.

164.     As alleged in detail herein, Colgate knew the misrepresentations and omissions regarding the Charcoal Toothpastes were false and misleading but nevertheless made such

representations and omissions through the marketing, advertising, and on the Charcoal Toothpastes' labeling. In reliance on these representations and omissions, Plaintiffs and Class Members were induced to, and did, pay monies to purchase the Charcoal Toothpastes.

165.    Had Plaintiffs and the Class known the truth about the Charcoal Toothpastes, they would not have purchased the Charcoal Toothpastes or would not have paid a price premium for the Charcoal Toothpastes.

166.    As a proximate result of the fraudulent conduct of Colgate, Plaintiffs and Class Members paid monies to Colgate, through its regular retail sales channels, to which Colgate is not entitled, and have been damaged in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated members of the Class(es), pray for relief and judgment, including entry of an order, as follows:

(a) Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiffs as Class Representatives and appointing Plaintiffs' counsel as Class Counsel;

(b) Directing that Defendant bears the costs of any notice sent to the Class(es);

(c) Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits it received from the sale of the Charcoal Toothpastes, or order Defendant to make full restitution to Plaintiffs and the members of the Class(es);

(d) Awarding Plaintiffs and members of the Class(es) statutory damages, as provided by the applicable state consumer protection statutes invoked above;

(e) Awarding attorneys' fees and litigation costs to Plaintiffs and members of the Class(es);

(f)  Civil penalties, prejudgment interest and punitive damages as permitted by law;

(g)  A jury trial and damages according to proof; and

(h)  Ordering such other and further relief as the Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs hereby demand a jury trial of the claims asserted in this Complaint.

Dated: December 22, 2021

Respectfully submitted,

*/s/ Jonathan Shub*
Jonathan Shub
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Highway East
2nd Floor
Haddonfield, NJ 08033
Tel: (856) 772-7200
Fax: (856) 210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiffs and the
Proposed Class*