UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FELIX BERMUDEZ, individually and on
behalf of all others similarly situated, et al.,

                      Plaintiffs,

-against-

COLGATE-PALMOLIVE COMPANY,

                      Defendant.

1:21-cv-10988 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

    Plaintiffs Felix Bermudez, Kimberly Richardson, Terri Corprew, Robert Sumrell, Hector Gonzalez, Harold Nyanjom, and Kellie Nyanjom (together, "Plaintiffs") bring this putative class action against Colgate-Palmolive Company ("Defendant").  Plaintiffs allege that Defendant's marketing of certain toothpaste products as "enamel safe" and promoting "whole mouth health," among other things, is false or deceptive because the inclusion of charcoal in the products renders them incapable of providing the advertised benefits.  Now pending before the Court is Defendant's motion to dismiss Plaintiffs' First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, Defendant's motion is GRANTED.

<strong>BACKGROUND</strong>

## I.    Factual Background

    Defendant Colgate-Palmolive Company is a Delaware corporation with its principal place of business and headquarters in New York, New York.  ECF No. 23 ("FAC") ¶ 38.[1]  Defendant

---

[1] Unless otherwise noted, the facts stated herein are "taken from the amended complaint, the allegations of which [the Court] accept[s] as true, as well as from other materials referenced in the amended complaint."  *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 176 (2d Cir. 2013); *see DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010).

sells oral care products, including two toothpastes that contain charcoal:  Colgate Total Whitening + Charcoal Toothpaste ("Total Charcoal") and Colgate Optic White with Charcoal Teeth Whitening Toothpaste ("Optic Charcoal" and, together with Total Charcoal, the "Products").  *Id*. ¶ 2.  Defendant "markets, labels, brands, and sells the [Products] throughout the United States, including New York."  *Id*. ¶ 39.

Plaintiffs are individuals who each purchased the Products in New York, New Jersey, California, Illinois, Connecticut, or Kansas.[2]

Defendant markets the Products as safe for tooth enamel and mouth health.  The front label of the Total Charcoal package represents that the toothpaste provides "whole mouth health," and the front label of the Optic Charcoal package represents that it is "enamel safe."  *Id*. ¶ 5.  The FAC further alleges that the Total Charcoal package contains the phrase "total mouth health."  *Id*. ¶¶ 5, 65, 67.  Plaintiffs refer to these representations as the "Safety Claims."  *Id*.[3] The FAC depicts the Products' packaging as follows:

---

Relevant filings include:  Plaintiffs' FAC, ECF No. 23; Defendant's Motion to Dismiss the FAC, ECF No. 26 ("MTD"); Defendant's Memorandum of Law in Support of Defendant's MTD, ECF No. 27 ("Br."); Plaintiffs' Opposition to Defendants' MTD, ECF No. 33 ("Opp."); Defendant's Reply in Further Support of Defendant's MTD, ECF No. 34; and Defendant's Notice of Supplemental Authority, ECF No. 37 ("Supp. Notice").

[2] Felix Bermudez purchased the Products in New Jersey, Kimberly Richardson in New York, Terri Corprew in California, Robert Sumrell in Illinois, Hector Gonzalez in Connecticut, and Harold Nyanjom and Kellie Nyanjom in Kansas.  *See id*. ¶¶ 24, 26, 28, 30, 32, 34, 36.

[3] Plaintiffs inconsistently use the term "Safety Claims."  In the FAC, Plaintiffs allege that the term encompasses "whole mouth health" and "enamel safe," FAC ¶ 5; in their opposition, Plaintiffs define the term as encompassing "Total Mouth Health" and "Enamel Safe," Opp. at 1-2.  Additionally, the Court agrees with Defendant that the Total Charcoal package does not appear to include the exact phrase "Total Mouth Health" as Plaintiffs allege.  Br. at 6 n.6.  Notwithstanding these discrepancies, because the Court finds that this issue does not impact its analysis in resolving the instant motion, it will refer to all three phrases – "whole mouth health," "enamel safe," and "Total Mouth Health" – collectively as the "Safety Claims."

 

 

FAC ¶¶ 62, 64.  The FAC alleges that Defendant also makes misrepresentations on its website, including about "the purpose and benefits of activated charcoal in its oral care products."  *Id*. ¶¶ 68-69.  For instance, Defendant represents on its website that Optic Charcoal is "good for daily use, enamel safe, and [that] the fluoride toothpaste provides protection against cavities."  *Id*. ¶ 68.  The FAC further alleges that Defendant "represented charcoal as having unique properties that added a special value."  *Id*. ¶ 98.

Plaintiffs "reviewed the product information and images" when purchasing the Products, and "understood them as representations by Defendant that the Charcoal Toothpastes were as safe as advertised."  *Id*. ¶ 25.  The FAC alleges that Plaintiffs "were exposed to Defendant's uniform Safety Claims," "reasonably relied on the oft-repeated Safety Claims," and "purchased the Charcoal Toothpaste based on Colgate's Safety Claims."  *See, e.g.*, *id*. ¶¶ 90-91, 100.

The FAC alleges that Defendant's marketing is false or deceptive.  Specifically, the FAC asserts that "[t]he consensus of respected dentists, researchers and industry experts weighs *against* the use of charcoal toothpastes because they are not safe to use, contrary to Defendant's Safety Claims."  *Id*. ¶ 8.  The FAC references several articles to show this consensus and that charcoal is harmful to tooth enamel and the mouth.  *See, e.g.*, ¶¶ 46-56.  The FAC principally

relies on a 2017 Journal of American Dental Association article (the "2017 JADA article"), 2019 British Dental Journal article (the "2019 BDJ article"), and 2015 Academy of General Dentistry study (the "2015 AGD study").  *See id.*[4]  Plaintiffs do not allege "that the representations at issue are unsubstantiated[,] but that the evidence affirmatively disproves them."  Opp. at 12.

Plaintiffs "would not have purchased the Charcoal Toothpastes on the same terms had [they] known the Safety Claims were not true."  *See, e.g.*, FAC ¶ 25.  The FAC alleges that Plaintiffs paid a "substantial price premium due to the false and misleading Safety Claims," *see, e.g.*, ¶ 25, and were "damaged by the total purchase price" paid, *id.* ¶¶ 93-94.

## II.   Procedural History

Plaintiffs commenced this action on December 22, 2021.  ECF No. 1.  On April 18, 2022, Defendant filed a premotion letter requesting leave to file a motion to dismiss, detailing the grounds for Defendant's anticipated motion.  ECF No. 14.  Defendant relied heavily in that submission on *Housey v. Procter & Gamble Co.*, No. 21-cv-02286 (NRB), 2022 WL 874731 (S.D.N.Y. Mar. 24, 2022) ("*Housey*" or "*Housey I*"), a recent decision dismissing with prejudice a case brought by Plaintiffs' counsel against another charcoal toothpaste manufacturer.  ECF No. 14 at 2-3.  Plaintiffs responded on April 21, 2022.  ECF No. 15.  On April 26, 2022, the Court granted Defendant leave to file its motion to dismiss, and afforded Plaintiffs leave to amend their Complaint to remedy any deficiencies.  ECF No. 17.

---

[4] *See* ECF No. 35-1 (John K. Brooks et al., *Charcoal and Charcoal-Based Dentifrices*, 148 JADA 661 (2017)); ECF No. 35-2, (Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 British Dental Journal 697 (2019)); ECF No. 35-4, Brantley McCarty et al., *Activated Charcoal as a Whitening Dentifrice*, presented at Academy of General Dentistry 2015 Annual Meeting, June 18-21, 2015, San Francisco, CA, https://www.epostersonline.com/agd2015/node/72.  Page citations to these articles refer to the ECF-generated page number.

In response, on June 9, 2022, Plaintiffs filed the FAC, asserting 12 claims on behalf of named Plaintiffs, a putative nationwide class, and putative sub-classes in New York, California, Illinois, Connecticut, and Kansas.  *See* FAC ¶¶ 142, 153-286.  The FAC asserts claims for: breach of express warranty on behalf of the nationwide class (Count 1); unjust enrichment on behalf of the nationwide class (Count 2); fraud on behalf of the nationwide class (Count 3); violations of the New York Deceptive Trade Practices Act, New York Gen. Bus. Law ("GBL") §§ 349, 350, *et seq.*, on behalf of Plaintiffs Felix Bermudez and Kimberly Richardson, and the putative New York sub-class (Counts 4-5); violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, and California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, on behalf of Plaintiff Terri Corprew and the putative California sub-class (Counts 6-8); violations of the Illinois Consumer Fraud Act ("CFA"), 815 ILCS 505/1, *et seq.* and the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), ILCS §§ 510/2, *et seq.*, on behalf of Plaintiff Robert Sumrell and the putative Illinois sub-class (Counts 9-10); violation of the Connecticut Trade Practices Act ("TPA"), C.G.S.A. §§ 42-110g, et seq., on behalf of Plaintiff Hector Gonzalez and the putative Connecticut sub-class (Count 11); and violation of the Kansas Consumer Protection Act ("CPA"), K.S.A. §§ 50-623, *et seq.*, on behalf of Plaintiffs Harold Nyanjom and Kellie Nyanjom and the putative Kansas sub-class (Count 12).  *See generally* FAC ¶¶ 153-286.

On August 29, 2022, Defendant filed its motion to dismiss.  *See* MTD.  Along with Defendant's notice of motion and memorandum of law in support, *see* Br., Defendant filed a Request for Judicial Notice in support of its motion, a Declaration of Robyn Bladow, and 16 exhibits, *see* ECF Nos. 28-29.  On September 20, 2022, this case was reassigned to the

undersigned.  *See* ECF No. 31.  Plaintiffs filed their memorandum of law in opposition to

Defendant's motion to dismiss on October 13, 2022.  *See* Opp.  Defendant filed its reply

memorandum of law in further support of its motion on November 8, 2022, *see* Reply, along

with a Reply Declaration of Robyn Bladow and four additional exhibits, *see* ECF No. 35.  On

December 28, 2022, Defendant filed a Notice of Supplemental Authority, attaching the summary

order issued by the Second Circuit Court of Appeals in *Housey v. Proctor & Gamble Co.*,

No. 22-888, 2022 WL 17844403 (2d Cir. Dec. 22, 2022) ("*Housey II*"), affirming the district

court's decision in *Housey I* relied on by Defendant and cited extensively in the parties' briefs.

*See* Supp. Notice.[5]

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6),

"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court must "accept all factual allegations as

true and draw all reasonable inferences in the plaintiff's favor."  *DiFolco*, 622 F.3d at 110-11

(quoting *Shomo v. City of N.Y.*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal brackets omitted).

But the court shall not "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Factual allegations must be enough to

raise a right of relief above the speculative level," *Twombly*, 550 U.S. at 555, and "[t]his standard

requires that the complaint allege 'more than a sheer possibility that a defendant has acted

---

[5] Because the parties submitted comprehensive briefing, and oral argument would not assist the
Court, the Court declines to hold oral argument.  *See, e.g.*, *AD/SAT v. AP*, 181 F.3d 216, 226 (2d
Cir. 1999) (holding that "a district court's decision whether to permit oral argument rests within
its discretion"); *see also* J. Rochon Individual Rules of Prac. in Civ. Cases 3(G).

unlawfully' and more than 'facts that are merely consistent with a defendant's liability," *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d at 180 (quoting *Iqbal*, 556 U.S. at 678). "Applying this standard is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679).

"Claims sounding in fraud must satisfy the heightened pleading standards of [Rule] 9(b)." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). "Under Rule 9(b)'s particularity requirement, the plaintiff must '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Id*. (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). "Rule 9(b) also requires plaintiffs to 'allege facts that give rise to a strong inference of fraudulent intent.'" *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 156 (S.D.N.Y. 2022) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

"In deciding a Rule 12(b)(6) motion, the Court may consider the following materials: (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, . . . [and (4)] facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) *aff'd sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005). "Where a document is referenced in a complaint, the documents control and this Court need not accept as true the

allegations in the amended complaint." *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (internal quotation marks and citation omitted).

## DISCUSSION

Defendant seeks dismissal on several grounds, including that: (1) the FAC does not plausibly allege that reasonable consumers would be misled by the claims at issue, especially since the FAC relies on purported scientific articles and studies that do not support Plaintiffs' claims; (2) the FAC does not properly plead an injury; (3) the unjust enrichment claim is impermissibly duplicative of Plaintiffs' other claims; and (4) the FAC does not plead scienter and other elements of the fraud-based claims with particularity. *See* Br. at 2. Put simply, Defendant contends that this case is like *Housey I*, in which the court dismissed the plaintiff's complaint with prejudice, and that "[t]he same result should follow here, where the grounds for dismissal are indeed even stronger." *Id*. at 1-2.

Plaintiffs oppose Defendant's motion. *See* Opp. They argue that *Housey I* "is not helpful here." *Id*. at 8 & n.12. Rather, Plaintiffs contend that *Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523 (S.D.N.Y. 2021), the other charcoal toothpaste case from this District, which preceded *Housey I* and survived a motion to dismiss in part, is "indistinguishable" from this case and should be followed. Opp. at 8; *see id*. at 2-3. Additionally, in their opposition, Plaintiffs withdraw their UDTPA claim. *Id*. at 25 n.14; *see* Reply at 10.[6] They confirm that "Plaintiffs do not allege that the representations at issue are unsubstantiated but that the evidence affirmatively disproves them," and do not otherwise advance a theory based on omissions. Opp. at 12. Plaintiffs also identify the allegedly misleading representations at issue as the front-label "Safety

---

[6] Plaintiffs do not withdraw their other Illinois claim brought under the CFA.

Claims," like they do in the FAC.  *Id.* at 1-2, 4.[7]  For the avoidance of doubt, the Court therefore

dismisses, as withdrawn and abandoned, the UDPTA claim (Count 10) and focuses its inquiry on

the Safety Claims.  *See, e.g.*, *Patellos*, 523 F. Supp. 3d at 530 ("At the motion to dismiss stage,

where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the

defendant's arguments in support of dismissing that claim." (internal citation omitted)).[8]

Since both parties rely in their briefs extensively on *Housey I* and *Patellos,* the two

charcoal toothpaste cases in this District, the Court first addresses the applicability of these cases.

The Court then addresses each of Plaintiffs' claims in turn.  Among other defects, the Court finds

that, as in *Housey*, the FAC does not plausibly allege a false or deceptive act.

## I.   The Parties' Reliance on *Housey I* and *Patellos*

The parties identify *Housey I* and *Patellos* as two cases that considered allegedly false or

misleading marketing of charcoal toothpastes on a motion to dismiss.  Neither case is binding on

this Court, but both are instructive.  The Court addresses each case in turn.

In *Housey I*, the plaintiff brought a putative class action against Proctor & Gamble

Company, alleging that the defendant made false or misleading statements regarding three

toothpastes that contained charcoal.  *Housey I*, at *1.  Like here, after the defendant filed a

premotion letter seeking leave to file a motion to dismiss, the plaintiff amended her complaint.

*Id*. *2.  Also like here, the amended complaint asserted claims for breach of express warranty,

fraud, and violations of consumer protection law.  *Id*.  The plaintiff alleged that the defendant's

---

[7] *See id*. at 7 ("Plaintiffs' allegation is that the presence of the charcoal renders Colgate's Safety Claims false and misleading."); *see also id*. at 14, 17, 22.

[8] To the extent Plaintiffs' FAC could be construed as asserting claims based on omissions or representations other than the Safety Claims, the Court has considered the FAC in its entirety and finds such claims fail for the same reasons stated herein.

representations of "enamel safe whitening," "healthier gums," and "gently clean[]" were deceptive "because the inclusion of charcoal in the toothpastes rendered the toothpastes incapable of providing these benefits" – the same theory advanced by Plaintiffs here.  *See id*. at *1.  To support allegations that these representations were false or misleading, the plaintiff relied on several articles and studies – the same sources relied upon by Plaintiffs here, including the 2017 JADA article, 2019 BDJ article, and 2015 AGD study.  *Compare id*. at *4-6 *with* FAC ¶¶ 46-56.

The district court in *Housey I* determined that the complaint failed to state a claim because it did not plausibly allege a deceptive act.  *Housey I*, at *4.  The court held that each of the plaintiff's claims failed because the complaint did "not plausibly plead that charcoal is an unsafe ingredient to use in toothpastes or that its presence in the 3D White Charcoal Toothpaste makes the toothpaste unable to provide the advertised benefits . . . ."  *Id*. at *4.  In reaching this conclusion, the court reviewed in detail the articles and studies referenced in the complaint.  *See id*. at *4-6.  The court found that the claims must be dismissed because these documents did "not support [the] plaintiff's claims that the addition of charcoal renders the [toothpaste] unable to provide" the advertised enamel safe benefits.  *Id*.  As a separate ground for dismissal, the court also found that the plaintiff failed to plead an injury and was "preempted from alleging that the toothpaste was ineffective such that she received no benefit" because her claims were subject to the Food and Drug Administration ("FDA")'s monograph regarding the effectiveness of fluoride toothpastes.  *Id*. at *8-9.  Accordingly, the court dismissed the complaint with prejudice. *Id*. at *10.

On appeal, and after the motion to dismiss in this case was fully briefed, the Second Circuit affirmed the district court's decision in *Housey II*.  The Second Circuit evaluated the

claims *de novo* and concluded that the plaintiff "did not plausibly allege" that the enamel safe representations were "deceptive or likely to mislead a reasonable consumer, [so] she cannot prevail on any of her claims." *Housey II*, at 2. Examining the *same* articles at issue in this case, the Second Circuit reasoned that even if the articles could "raise some inference that charcoal may be harmful to tooth enamel," the "articles do *not* suggest that the Crest *toothpaste* or *any similar charcoal toothpaste*" is harmful or incapable of providing enamel safe benefits. *Id*. (emphasis added). The Second Circuit also concluded that the district court did not err in denying leave to amend as futile, and affirmed the district court's dismissal with prejudice. *Id*.

As set forth above, *Housey* is very similar to this case. Many of the factual allegations in the FAC appear to have been copied, at least in part, from the complaint in *Housey*. *See, e.g.*, FAC ¶¶ 42-61, 73-86, 88-132. With the exception of Defendant's name, the paragraphs in the FAC regarding the articles and studies are nearly identical to the pleadings in *Housey*. *See id*. ¶¶ 76-83. The claims in *Housey* – "enamel safe whitening," "healthier gums," and "gently clean" (*Housey I*, at *4) – are similar to the claims here – "enamel safe," "total mouth health," and "whole mouth health." FAC ¶¶ 5, 63, 65.

Plaintiffs argue that *Housey I* is inapposite because the district court "characterized the inclusion of charcoal in the 'Crest' products as a 'flavor,'" whereas "Plaintiffs here do not make that allegation." Opp. at 8. However, as Plaintiffs' counsel is aware given that they also represented the plaintiff in *Housey I*, the plaintiff in *Housey I* also did not make that allegation. Rather, the district court in its analysis referred to charcoal as a "flavor," like mint or artic fresh,

for ease of reference (*Housey I,* ECF No. 37 (Transcript of March 1, 2022 Oral Argument at 6:3-5)), and the Second Circuit reached the same conclusion without using this terminology.[9]

Plaintiffs ask this Court to follow *Patellos* instead of *Housey*.  In *Patellos*, where the motion to dismiss was decided about a year before *Housey I*, the plaintiffs alleged that Hello Products misled consumers by marketing its charcoal toothpastes as safe, effective, and whitening.  523 F. Supp. 3d at 527.  The representations at issue in *Patellos* "emphasize[d] the 'detoxifying and absorptive properties *of activated charcoal*' in [the] toothpastes," and the plaintiffs "specifically relied upon representations that the Charcoal Toothpastes had teeth whitening and detoxifying effects *from the activated charcoal* . . . ."  *Patellos*, 523 F. Supp. 3d at 528 (emphasis added).  The defendants represented that "charcoal toothpastes have been specifically formulated to be gentle enough for daily use" and "activated charcoal adsorb[s] the odors that cause bad breath and the tannins that can stain teeth, when used in toothpaste form."  *Id*. at 528, 531.  The court denied the defendant's motion to dismiss in part.  *Id*. at 527.

Although Plaintiffs urge otherwise, "*Patellos* differs from the instant case in several important respects."  *Housey I*, at *7.  First, as stated above, the product claims at issue in *Patellos* specifically and expressly highlighted the properties of charcoal.  By contrast, here, Plaintiffs challenge the safety and benefits of the Products as a whole, and none of the Safety Claims expressly refer to "charcoal," nor do they emphasize particular benefits from the addition of charcoal as an ingredient.  *See, e.g.*, *Housey I*, at *7 (distinguishing *Patellos* because, "here,

---

[9] Plaintiffs further argue that *Housey I* is not helpful because the court there "made a *sua sponte ex parte* request" to physically review other toothpastes in the product lines.  Opp. at 9.  However, the Second Circuit reached the same conclusion in *Housey II* without conducting such a review.  *Housey II*, at *2 n.3 (concluding that the "complaint is insufficient to plausibly allege a deceptive act" without regard to the plaintiff's procedural objections).

there are no statements on the toothpaste that plaintiff purchased that indicate that the addition of charcoal conveys any benefit to the efficacy or safety of the product").

Second, the products in *Patellos* included both fluoride and non-fluoride toothpastes. *Patellos*, 523 F. Supp. 3d at 527, 529-30.  As to the former, the plaintiffs conceded, and the court dismissed, any claims "that might be construed as relating to the safety or efficacy of fluoride in Hello's products, including based on the interaction of fluoride" with charcoal, because the court found that such claims were preempted by the FDA monograph related to fluoride in toothpastes. *Id*. at 529-30.  Here, "fluoride is the only active ingredient in both products," Br. at 12, and, like the claims dismissed as preempted in *Patellos*, Plaintiffs allege that "any inclusion of fluoride for health [in toothpaste] is counteracted and rendered moot by the inclusion of charcoal," Opp. at 11, 15-16.

Finally, and most importantly, in *Patellos*, the plaintiffs submitted evidence regarding the specific charcoal toothpaste at issue, neither party filed the articles cited in the complaint or otherwise attached them to their motion papers for the court's review, and neither party briefed the content of those articles on the motion to dismiss.  *See* 523 F. Supp. 3d at 531 (citing American Dental Association statement regarding risks to enamel of using Hello's toothpaste); *see also Housey I*, at *7 (distinguishing *Patellos* because plaintiffs there "submitted evidence regarding the specific toothpaste at issue").  In contrast, here, Plaintiffs have not submitted any study regarding the actual Colgate toothpastes at issue, the parties did file articles cited in the FAC for the Court's review, and the parties dispute and briefed the import of the articles in their briefs.  Since *Patellos*, the Second Circuit and another district court have also considered the articles at issue and dismissed similar claims that relied on those articles.  *See Housey II*, at *2.

Plaintiffs cannot avoid these articles and the Second Circuit's evaluation of them.  They cannot put the toothpaste back in the tube.

In sum, both cases are instructive, although not binding, here.  *Housey* is especially analogous to the facts of this case, and the Court finds that district court decision, as affirmed by the Second Circuit, compelling in its resolution of the instant motion.  As set forth below, the Court dismisses Plaintiffs' similar claims on similar grounds.

## II.  Statutory Claims

Plaintiffs bring claims under the New York, California, Illinois, Connecticut, and Kansas consumer protection statutes.

### A.  Legal Standard

Under the New York statutes, to state a claim for "deceptive acts or practices in the conduct of any business, trade, or commerce in the furnishing of any service in this state," GBL § 349(a), a plaintiff must allege that "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result," *Electra v. 59 Murray Enters.*, 987 F.3d 233, 258 (2d Cir. 2021) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)).  Acts or practices are "deceptive" if they "were likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *see Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (stating the same standard for GBL § 350).

Under California law, the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770(a).  "Prohibited practices include: '[r]epresenting that goods or services have . . . characteristics, ingredients, uses [or] benefits . . . that they do not have'; '[r]epresenting that goods . . . are of a particular standard, quality, or

14

grade . . . if they are of another'; and '[a]dvertising goods or services with intent not to sell them as advertised.'" *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 682 (S.D.N.Y. 2017) (quoting CLRA §§ 1770(a)(5), (7), and (9)).  "The list of proscribed practices in the CLRA also encompasses the 'concealment or suppression of material facts.'" *Id*. (quoting *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 185 (Cal. Ct. App. 2010)).

Under Illinois law, to state a claim under the CFA, a plaintiff must plead: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 608 (7th Cir. 2013) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (Ill. 2002)).

Under the Connecticut TPA, a plaintiff must plead (1) "a representation, omission, or other practice likely to mislead consumers" (2) where the consumers "interpret the message reasonably under the circumstances" and (3) the misleading representation, omission, or practice is material – "that is, likely to affect consumer decisions or conduct." *Michel v. Yale Univ.*, 547 F. Supp. 3d 179, 193 (D. Conn. 2021) (quoting *Cadco, Ltd. v. Doctor's Assocs., Inc.*, 188 Conn. App. 122, 142 (2019)).

Under Kansas law, the CPA prohibits any "deceptive" or "unconscionable" "act or practice in connection with a consumer transaction."  K.S.A. §§ 50-626(a), 50-627(a). "Deceptive" acts or practices include "[r]epresentations made knowingly or with reason to know that" property or services have characteristics, ingredients, uses, or benefits "that they do not have." K.S.A. § 50-626(b)(1)(A); *see also* K.S.A. § 50-627(b) (defining "[u]nconscionability" for purposes of the statute).

While the various state statutes differ in some ways, Plaintiffs' claims under each statute require a deceptive or misleading act.  *See, e.g.*, *In re Kind LLC "Healthy & All Nat." Litig.*, 209 F. Supp. 3d 689, 697 & n.4 (S.D.N.Y. 2016) (collecting cases as to New York GBL, California CLRA, FAL, UCL, and Illinois CFA); *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 190 (2d Cir. 2020) (Connecticut TPA); *Hills v. Arensdorf*, 543 F. Supp. 3d 1065, 1075 (D. Kan. 2021) (Kansas CPA).  The parties agree that the "reasonable consumer" standard applies to these claims, under which Plaintiffs must plausibly allege that the deceptive conduct was "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Fink*, 714 F.3d at 741; Br. at 6-7, 19-23; Opp. at 4, 24.

On a motion to dismiss, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  *Fink*, 714 F.3d at 741-42 (concluding that the "claims lack the facial plausibility necessary to survive a motion to dismiss"); *see Geffner v. Coca-Cola Co.*, 928 F.3d 198, 201 (2d Cir. 2019) (affirming dismissal because claims of false advertising were implausible).  In making this determination, a court should be "mindful that issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss."  *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 141 (E.D.N.Y. 2015) (collecting cases).  However, where a plaintiff has "chosen to use scientific studies in an effort to raise plausible inferences" that marketing is deceptive, and "the studies cited do not" support her claims, the plaintiff has not plausibly pleaded her claims.  *Id*. at 141; *Housey I*, at *6 ("Where a plaintiff has chosen to use scientific evidence to state her claims, and that evidence does not support her claims, plaintiff has not plausibly pled her claims."); *see also Tongue*, 816 F.3d at 206 n.6.

### B.  Application

Plaintiffs argue that Defendant's marketing is "likely to deceive a reasonable consumer, because scientific studies and other evidence show that Colgate's Charcoal Toothpastes are not safe for enamel or healthy to use on teeth and in the mouth overall."  Opp. at 5; *see* FAC ¶¶ 7-8. The FAC does "not allege that the representations at issue are unsubstantiated but [that] the evidence affirmatively disproves them," Opp. at 12, and relies on the 2017 JADA article, 2019 BDJ article, and 2015 AGD study, FAC ¶¶ 49-56.[10]  Defendant argues that the FAC does not plausibly allege that their marketing is false or deceptive.  The Court agrees with Defendant.

First, the FAC fails to plausibly allege that Defendant's toothpastes contain charcoal that is sufficient to render the toothpastes unsafe and incapable of providing the advertised benefits. Plaintiffs' 2019 BDJ article states that, "[t]he abrasive potential of charcoal-based dentifrices is considered to depend on the [1] nature, [2] method of preparation, and [3] particle size distribution of the charcoal included in the formulation."  ECF No. 35-2 at 4.  Here, the FAC does not allege any of these qualities with respect to the charcoal contained in Defendant's toothpastes.  The FAC does not allege the nature of the charcoal in the toothpastes.  It does not allege the method of preparation of the charcoal.  Nor does the FAC allege the particle size distribution of charcoal in the toothpastes.

In *Housey II*, the Second Circuit affirmed the dismissal of claims in *Housey I*, where the plaintiff relied on the same 2019 BDJ article at issue here, because the panel determined that the "complaint fail[ed] to plausibly allege" that the defendant's "[c]harcoal [t]oothpaste contain[ed]

---

[10] Plaintiffs address only the 2017 JADA article, 2019 BDJ article, and 2015 AGD study in their opposition and, therefore, abandon contentions based on other sources referenced in the FAC. *See, e.g.*, *Patellos*, 523 F. Supp. 3d at 530.  In any event, the Court has considered the FAC in its entirety, including references to other sources, and finds that it is insufficient to state a claim.

sufficient charcoal content so as to render the toothpaste harmful and incapable" of providing the advertised benefits.  *Housey II*, at *2.  The district court likewise concluded that, because the complaint did not plausibly allege that the presence of charcoal in the defendant's toothpaste "makes the toothpaste unable to provide the advertised benefits, [the] plaintiff's complaint fails." *Housey I*, at *4.  The court noted that the plaintiff did not allege "the amount or composition of the charcoal" in the toothpaste, undermining the plaintiff's broad "claims that including charcoal in the toothpaste, *however minute the amount*, renders the product unsafe for use."  *Id*. (emphasis added).  So too here, the FAC fails to plausibly allege that Defendant's toothpastes contain charcoal sufficient to render the advertising false or misleading.

Courts have similarly dismissed false advertising claims in other cases because the plaintiff alleged insufficient facts to plausibly infer that the products were incapable of providing the advertised benefits.  For example, in *Truss v. Bayer Healthcare Pharms. Inc.*, the plaintiffs alleged that the defendant's sunscreen label was false and misleading because it stated that the sunscreen was "'Hypoallergenic & Gentle,' but [the sunscreen] contains benzophenone which is widely regarded as an allergen and skin irritant."  No. 21-cv-09845 (VB), 2022 WL 16951538, at *5 (S.D.N.Y. Nov. 15, 2022) (internal citation omitted).  The plaintiffs cited two studies in support, and one of those studies indicated that adverse reactions to benzophenone depended on the type of benzophenone compound in the sunscreen.  *Id*.  Despite this study, the complaint did "not specifically identify which benzophenone compound is present in the Product."  *Id*.  The court therefore dismissed the claims in part because, "[i]n light of the study's comment" regarding differences in benzophenone compounds, "the Court cannot reasonably infer from the [complaint] that the potentially allergenic benzophenones are present in the Product."  *Id*.; *see also Turnipseed v. Simply Orange Juice Co.*, No. 20-cv-08677 (NSR), 2022 WL 657413, at *4

(S.D.N.Y. Mar. 4, 2022) (dismissing complaint that did not plausibly allege that the defendant's product contained artificial flavors, since the allegations were not supported by the cited study and did not "concern matters of common knowledge for which such conclusion would evidently follow"). Here, too, the Court cannot reasonably infer that Defendant's toothpastes contain sufficient charcoal so as to render the toothpastes unsafe and incapable of providing the advertised benefits.

Second, the FAC fails to raise a plausible inference that Defendant's marketing is false or deceptive because Plaintiffs' purported scientific articles do not show that Defendant's charcoal toothpastes lack the advertised benefits. Nor do the articles "affirmatively disprove[]" the Safety Claims, as Plaintiffs' contend. Opp. at 12. Instead, Plaintiffs' articles undermine the plausibility of allegations in the FAC.

Plaintiffs' 2017 JADA article does not suggest that Defendant's marketing is false or misleading. *See* ECF No. 35-1. The FAC alleges that the 2017 JADA article "shows charcoal 'is abrasive on teeth and gingiva' and that 'any inclusion of fluoride for health in charcoal toothpaste is counteracted and rendered moot by the inclusion of charcoal,' thereby showing Colgate's Safety Claims are deceptive." Opp. at 11 (quoting FAC ¶¶ 52, 61) (internal brackets omitted). However, far from showing that charcoal in toothpaste is abrasive and unsafe, the 2017 JADA article reported that nearly 30 percent of the "charcoal products [reviewed] claimed to be low abrasive" and the only laboratory test result showed "a *low* relative detin abrasivity score . . . ." ECF No. 35-1 at 10 (emphasis added). Rather than showing that the inclusion of charcoal renders fluoride in toothpaste moot and ineffective, the article stated that it was an "*intriguing question*" whether fluoride "would be rendered either chemically inert or minimally effective" by charcoal. *Id*. (emphasis added). The article found no "controlled clinical studies"

of charcoal-based dentifrices, observed that all of the studies it reviewed "lacked adequate controlled designs," and concluded that "[l]arger-scale and well-designed studies [would be] needed to establish conclusive evidence." *Id*. at 2, 4, 8.  It made no findings about Defendant's Total Charcoal or Optic Charcoal toothpastes specifically.  And the article found that at least one study "indicated that brushing with raw charcoal had *no* adverse effects on oral hygiene." *Id*. at 2, 3 (emphasis added).  In sum, the article does not support – and if anything, undermines – allegations in the FAC that charcoal in Defendant's toothpastes is unsafe and renders the fluoride inert. *See also Housey I*, at *5 (concluding that the 2017 JADA article does not support the allegations).

The 2019 BDJ article similarly does not show that Defendant's charcoal toothpastes are unable to provide the advertised benefits.  While the FAC alleges that the benefits Defendant ascribes to their charcoal toothpastes have been "affirmatively disprove[n]," Opp. 12, the 2019 BDJ article concluded that benefits in the "marketing of charcoal dentifrices" that "appeal to consumers . . . *have yet to be disproved*," ECF No. 35-2 at 3 (emphasis added).  Contrary to Plaintiffs' assertion that the article shows that Defendant's toothpastes are unsafe and abrasive, the article instead observed that "there is a paucity of scientific data on the efficacy of charcoal dentifrice." *Id*. at 2.  The 2019 BDJ article never addressed Defendant's Colgate toothpastes.  As the Court noted above, the 2019 BDJ article also opined that "[t]he abrasive potential of charcoal-based dentifrices is considered to depend on the nature, method of preparation, and particle size distribution of the charcoal included in the formulation," ECF No. 35-2 at 4, yet the FAC does not allege the nature, method of preparation, or particle size distribution of the Defendant's toothpastes.  Accordingly, this article cuts against the plausibility of Plaintiffs' claims. *See, e.g.*, *Housey I*, at *5 (concluding that the 2019 BDJ article "provides no support for

plaintiff's assertion that the Crest 3D White Charcoal Toothpaste that plaintiff purchased is harmful to enamel").

Plaintiffs' 2015 AGD article also does not support the FAC "because it is not even about charcoal toothpaste." *Id*. Instead, the article analyzed brushing teeth directly with activated charcoal mixed with a milliliter of water and found that this mixture was "more abrasive than a whitening toothpaste on acrylic resins." ECF No. 35-4. This comparison provides no support for claims regarding Defendant's charcoal *toothpastes*. *See Housey I*, at *5 (finding the 2015 AGD study "plainly inapplicable" because it addressed raw activated charcoal instead of charcoal toothpaste); *see, e.g.*, *Kardovich*, 97 F. Supp. 3d at 139 (finding "the results of studies on particular diseases or conditions do not lend facial plausibility to far more general health benefit claims"). Additionally, the study authors concluded that their "research does not prove that activated charcoal is unsuitable for intraoral use." ECF No. 35-4. Like Plaintiffs' other articles, the 2015 AGD article never analyzed the Colgate toothpastes at issue here.

The Second Circuit and district court considered and rejected the same articles in *Housey*. The Second Circuit held that the complaint failed to plausibly allege a deceptive act because the "articles do not suggest that the Crest toothpaste *or any similar charcoal toothpaste*" is unsafe or unable to provide the advertised benefits. *Housey II*, at *2 (emphasis added). The district court similarly held that "the articles do not support plaintiff's claims that the addition of charcoal renders the [defendant's] Charcoal Toothpaste unable to provide" enamel safe benefits, so the "plaintiff has failed to allege that [the] defendant has made a false or deceptive statement." *Housey I*, at *6.

This Court has independently reviewed the articles, record, and claims in this case. It reaches the same result as in *Housey*: the articles do not suggest that Colgate's charcoal

toothpastes are unsafe or otherwise not as advertised.  The articles do not "affirmatively disprove[]" Defendant's marketing, Opp. at 12, nor do they support a plausible inference that the marketing is false, misleading, or deceptive.  Instead, the articles undermine the FAC in substantial respects.

In their opposition, Plaintiffs argue that the Court should not consider the articles – articles that *Plaintiffs* chose to rely on in the FAC – because doing so would raise questions of fact not appropriate for resolution on a motion to dismiss.  *See* Opp. at 10-11.  However, Plaintiffs' argument misconstrues the court's consideration of the articles, and the law.  The Court has not resolved issues of fact on this motion.  Instead, it has determined that the FAC fails to plausibly plead a false or deceptive act as a matter of law.  Courts regularly look to documents referenced in a complaint and make such determinations on a motion to dismiss, as the caselaw Plaintiffs cite makes clear.  *See id.* at 15 (citing *Segovia v. Vitamin Shoppe, Inc.*, No. 14-cv-07061 (NSR), 2016 WL 8650462, at *8 (S.D.N.Y. Feb. 5, 2016) (dismissing claims not supported by studies cited in the complaint and concluding that, "[a]lthough Plaintiffs contend that determination of whether a statement is deceptive is a question of fact, it is well settled that a court may make this determination as a matter of law")); *see also Kardovich*, 97 F. Supp. 3d at 140-41 (dismissing complaint unsupported by cited studies, without considering "issues of fact, credibility, and the weight of the evidence").

Courts have dismissed false advertising claims in similar circumstances where the plaintiffs chose "to use scientific studies in an effort to raise plausible inferences," and those studies did not support plausible claims of deception or falsity.  *Kardovich*, 97 F. Supp. 3d at 141.  As discussed earlier, the Second Circuit and district court considered the same articles at

issue here and, based on that review, determined that the complaint in *Housey* failed to plausibly allege a false or deceptive act. *See Housey I*, at *4-7; *Housey II*, at *2.

Similarly, in *Kardovich v. Pfizer, Inc.*, the plaintiffs complained that labels which touted the positive health benefits of multivitamins were "'false, misleading and deceptive' because they [we]re 'affirmatively contradicted' by the scientific evidence cited in the complaint." 97 F. Supp. 3d at 137 (internal brackets and citation omitted). On a motion to dismiss, the court found that there was "a disconnect between the scope of [the plaintiff]'s claim and the conclusions" of the articles, and that the articles did "not lend facial plausibility" to claims that the labels were false or deceptive. *Id*. at 138-39. The court therefore concluded: "As here, where plaintiffs point to scientific studies that they allege actually disprove a product's claims, such a stark disconnect between the scientific studies and the claims made about [the product]'s benefits is fatal to plaintiffs' complaint." *Id*. at 138.

Likewise in *Barreto v. Westbrae Natural Inc.*, the court dismissed claims that labels of vanilla-flavored soymilk deceptively represented that its flavor derived from the natural vanilla plant, since "the analysis on which the Complaint heavily relies does not state or otherwise plausibly support the conclusion that the added vanillin comes from artificial rather than natural sources." 518 F. Supp. 3d 800, 803 (S.D.N.Y. 2021). Courts in other cases have dismissed claims for similar reasons. *See, e.g.*, *Truss*, 2022 WL 16951538, at *5-6 (dismissing false advertising claims regarding benzophenone in sunscreen because one study cited in the complaint indicated that scientific evidence on the subject was "scarce" and incomplete, and another study examined "benzophenones in sunscreen" without proving, as the plaintiff had claimed, that it was an allergen); *Eckler v. Wal-Mart Stores, Inc.*, No. 12-cv-00727 (LAB) (MDD), 2012 WL 5382218, at *6-7 (S.D. Cal. Nov. 1, 2012) (dismissing claims because "the

Court cannot accept that the studies [the plaintiff] cites lend 'facial plausibility' to her claims that the Equate representations are false or misleading" when "none of these studies actually involved Equate"); *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (per curiam) (rejecting allegation as implausible where articles "attached to the complaint[] undermine the allegation").

Accordingly, accepting the well-pleaded allegations as true, considering the documents Plaintiffs reference in the FAC, and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that the FAC does not plausibly allege a false, misleading, or deceptive act, and Plaintiffs' statutory claims must therefore be dismissed. *See, e.g.*, *Fink*, 714 F.3d at 741-42; *Geffner*, 928 F.3d at 201 ("Because Plaintiffs have failed plausibly to allege a misleading statement, each of their proposed causes-of-action lacks a necessary element.").[11]

### III. Fraud Claim

"Common law fraud requires a (1) material misrepresentation or omission, (2) with knowledge of its falsity, (3) for the purpose of inducing an action by plaintiffs, (4) that was reasonably relied upon, and (5) that caused injury." *Olson*, 29 F.4th at 72. Because the FAC does not plead a false or misleading act, *see supra* Discussion § II(B), the fraud claims are dismissed, *see, e.g.*, *Dwyer*, 598 F. Supp. 3d at 154 (dismissing fraud claims "[b]ecause [the court] already determined that Plaintiff fails to allege that the statements, advertising, and practices relating to the Product would be likely to deceive or mislead a reasonable consumer").

---

[11] Because the Court finds that the FAC does not plausibly allege a deceptive act under Rule 8, the Court need not reach other bases for dismissal of the statutory claims. *See, e.g.*, *Geffner*, 928 F.3d at 201 (affirming dismissal based only on failure "plausibly to allege a misleading statement"); *Barreto*, 518 F. Supp. 3d at 806 (dismissing claims for failure to allege a deceptive act without reaching injury or preemption).

As an additional basis for dismissal, the Court finds that the FAC does not allege sufficient facts to give rise to a strong inference of fraudulent intent. A strong inference of fraudulent intent requires that a plaintiff plead (1) "facts to show that defendants had both motive and opportunity to commit fraud" or (2) "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996). Plaintiffs only contend that the FAC satisfies the second prong of this standard. *See* Opp. at 22-23.

Plaintiffs rely on the following allegations to plead fraudulent intent. The FAC avers that, "[b]y falsely advertising and deceptively misbranding its Charcoal Toothpastes," Defendant "has acted unlawfully to prioritize its own profits and jeopardize consumers' dental hygiene, oral health and safety." FAC ¶ 15. The FAC alleges that Defendant "knew, or should have known, that the Charcoal Toothpastes did not possess the promised benefits and safety, and that there was a risk of harm," since "[s]cientific studies and journals that contradicted many of Colgate's claims were published and available to Colgate at the time it disseminated its claims and marketing content." *Id.* ¶ 80. The FAC excerpts news and media reports that allegedly reported on those studies and journals. *Id.* ¶ 81. The FAC further alleges that Defendant "cannot claim there was no knowledge of such fraud" because Defendant did not receive the American Dental Association's Seal of Acceptance for its charcoal toothpastes, as it did for some of the other products in its "Total" product line. Opp. at 23 (citing FAC ¶¶ 60-61).

These allegations are insufficient to "constitute strong circumstantial evidence of conscious misbehavior or recklessness." *S.Q.K.F.C., Inc.*, 84 F.3d at 634. Even assuming the FAC plausibly alleged a false or deceptive act, which it does not (*see supra* Discussion § II(B)), Plaintiffs do not adequately allege intent for several additional reasons. Although the FAC

references Defendant's profit motive, "it is well-settled that pointing to a company's general profit motive is insufficient to plead scienter," *Turk v. Rubbermaid Inc.*, No. 21-cv-00270 (KMK), 2022 WL 836894, at *13 (S.D.N.Y. Mar. 21, 2022) (collecting cases), and Plaintiffs do not even argue that the FAC satisfies the "motive and opportunity" prong for scienter, *see* Opp. at 22-23.  The FAC's general allegations that Defendant "knew, or should have known" that the Products were unsafe and incapable of providing the advertised benefits given the public articles and reports on the subject "does not rise to the level of specific facts necessary to support an inference of fraudulent intent." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 354 (S.D.N.Y. 2020).  For instance, the FAC does not allege facts to support a plausible inference that any particular employee or officer was aware of the public reports and alleged health risks of charcoal in toothpaste, that the Colgate toothpastes contained sufficient charcoal to render the products unsafe, or that the toothpastes were marketed in a way that misrepresented their actual benefits and safety.  Nor do the articles referenced by Plaintiffs address the actual Colgate charcoal toothpastes at issue. *C.f. Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 473 (E.D.N.Y. 2013) (fraudulent intent sufficiently alleged where the complaint alleged the defendants "knew the representations were false" and identified a study that specifically evaluated defendant's product and "principal representations").  Finally, the FAC's allegations regarding the "Seal of Acceptance" have little, if any, relevance to Defendant's fraudulent intent, since Plaintiffs do not allege that Defendant even applied to receive the seal for its charcoal toothpastes. *See Housey I*, at *7 n.10 (rejecting allegations regarding the "Seal of Acceptance" as unpersuasive).

Courts have dismissed claims with more fulsome factual allegations of fraudulent intent than are in the FAC.  For example, in *Duran v. Henkel of Am., Inc.*, the plaintiff alleged that the defendant falsely advertised its hair gel as "no flakes," when in fact, it produced flakes.  450 F.

Supp. 3d at 342-43.  With respect to fraudulent intent, the plaintiff alleged that the gel contained

PVP, that public articles discussed PVP's tendency to produce flakes, that an article specifically

geared to cosmetic scientists detailed PVP's flaking properties and highlighted "no-flake"

alternatives, and that the defendant employed cosmetic scientists familiar with the flaking

properties of PVP and alternative ingredients that could have fulfilled the "no flake" promise, yet

the defendant wanted to boost profits and marketed their product containing PVP as "no flake."

*Id*. at 354.  The court found that these allegations did "not support the inferential chain needed to

yield fraudulent intent – that PVP causes flaking; that cosmetic scientists at Henkel knew about

this characteristic of PVP; that these scientists, or others at Henkel with whom the scientists

shared their knowledge, intended to defraud consumers by labeling a flaking hair gel as one that

creates 'no flakes'; and that this intent could be imputed to Henkel."  *Id*. at 355.  The court

therefore concluded that the "allegations [we]re not sufficient to raise a strong inference of

fraudulent intent."  *Id*. at 354.  Here, too, the allegations in the FAC – which are more sparse

than those in *Duran* – do not support a strong inference of fraudulent intent.

Courts have similarly dismissed claims in other cases where the plaintiff failed to allege

enough facts to give rise to a sufficiently strong allegation of fraudulent intent.  *See, e.g.*, *Quiroz

v. Beaverton Foods, Inc.*, No. 17-cv-07348 (NGG), 2019 WL 1473088, at *10-11 (E.D.N.Y.

Mar. 31, 2019) (no fraudulent intent based on allegations that defendant's "'No Preservatives'

label was false" even though defendant "employs food scientists who are familiar with the basic

properties of citric acid" so "[d]efendant knew that citric acid was a preservative"); *Sarr v. BEF

Foods, Inc.*, No. 18-cv-06409 (ARR), 2020 WL 729883, at *9 (E.D.N.Y. Feb. 13, 2020) (no

fraudulent intent based on allegation that a public "brochure indicate[d] that the public

mistakenly believed refrigerated potatoes were 'just prepared,' and that by invoking the term

'fresh' despite knowing about consumers' mistaken belief, BEF wanted consumers to 'persist in believing something which is not true'"); *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 250 (S.D.N.Y. 2021) (finding no fraudulent intent because allegation that defendant's "intent is evinced by its failure to accurately identify the Product on the front labels, when it knew its statements were neither true nor accurate and could mislead consumers" was "a general, conclusory claim [and] insufficient to adequately state a claim for fraud").

Accordingly, Plaintiffs' fraud claim is also dismissed on the additional ground that the FAC does not plead fraudulent intent.

## IV. Breach of Express Warranty Claim

"To state a claim for breach of express warranty, plaintiff must allege that 'there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment.'" *DiBartolo v. Abbott Lab'ys.*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012) (quoting *Weiner v. Snapple Beverage Corp.*, No. 07-cv-08742, 2011 WL 196930, at *5 (S.D.N.Y. Jan. 21, 2011)). "The affirmation of fact or promise must have been 'false or misleading when made.'" *Id.* (internal citation omitted). Here, Plaintiffs base their express warranty claim on similar factual allegations as their statutory claims. *See* Opp. at 18-20. For the same reasons that Plaintiffs' statutory claims fail, including that the FAC fails to plead a false, misleading, or deceptive act, *see supra* Discussion § II(B), Plaintiffs' express warranty claim is dismissed, *see, e.g., Dwyer*, 598 F. Supp. 3d at 154-55.

## V. Unjust Enrichment Claim

"To state a claim for unjust enrichment under New York law, a Plaintiff must show that '(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be

inequitable to permit the defendant to retain that which is claimed by Plaintiff.'"  *Id*. at 156 (quoting *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015)).  "Unjust enrichment is not a catchall cause of action to be used when others fail . . . .  An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'"  *Patellos*, 523 F. Supp. 3d at 536-37 (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)).  "Rather, it 'is available *only* in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'"  *Id*. (quoting *Corsello*, 18 N.Y.3d at 790).

Here, Plaintiffs' unjust enrichment claim is premised on similar allegations as their other claims, i.e., that the inclusion of charcoal rendered the Products unable to deliver on the advertised benefits.  *See, e.g.*, FAC ¶¶ 169-171.  This claim, therefore, fails for the same reasons as the other claims.  *See supra* Discussion § II(B); *see, e.g.*, *Dwyer*, 598 F. Supp. 3d at 154-55.

The unjust enrichment claim fails for the additional reason that it is duplicative of Plaintiffs' other claims.  "[A] plaintiff may plead unjust enrichment in the alternative, but where an unjust enrichment claim is duplicative of other causes of action, it should be dismissed." *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 467 (S.D.N.Y. 2019).  An unjust enrichment claim is duplicative if it "relies on the same conduct that forms the basis of [the plaintiff's] other claims."  *Id*.; *see, e.g.*, *Patellos*, 523 F. Supp. 3d at 536-38 (dismissing unjust enrichment claim because it "essentially replicates" the plaintiffs' other claims).

Plaintiffs do not sufficiently distinguish their unjust enrichment claim from their other claims, which all relate to the same factual allegations.  The unjust enrichment claim is based on Plaintiffs having "conferred benefits on Defendant by purchasing the Charcoal Toothpastes

based on Defendant's Safety Claims."  FAC ¶ 169; *see also* ¶ 170 ("Defendant received the benefits to the detriment of Plaintiffs . . . [who] purchased mislabeled Charcoal Toothpastes that are not what they bargained for and that did not provide any of the promised benefits as advertised by Defendant."); ¶ 171 ("Defendant has been unjustly enriched . . . . because Defendant's labeling of the Charcoal Toothpastes was misleading to consumers, which caused injuries to Plaintiffs . . . because they would have not purchased the Charcoal Toothpastes had they known the true facts.").  These pleadings essentially replicate Plaintiffs' claims for breach of express warranty, fraud, and violations of state consumer protection statutes.

Specifically, the unjust enrichment claim is based on similar allegations as the (1) breach of express warranty claim (*compare id*. ¶¶ 169-171 *with id*. ¶ 157 ("Defendant's affirmations of fact or promise were made to the Plaintiffs and members of the Class on the Product packaging and labeling of the Charcoal Toothpastes."), ¶ 158 ("Defendant breached express warranties about the Products and their qualities because Defendant's statements about the Products were false and the Products do not conform to Defendant's affirmations and promises as described above."), *and* ¶ 159 ("Had they known the true nature of the Products, Plaintiffs and each of the members of the National Class would not have purchased the Products.")); (2) fraud claim (*compare id*. ¶¶ 169-171 *with id*. ¶ 177 ("Colgate knew the misrepresentations and omissions regarding the Charcoal Toothpastes were false and misleading but nevertheless made such representations and omissions through the marketing, advertising, and on the Charcoal Toothpastes' labeling. In reliance on these representations and omissions, Plaintiffs and Class Members were induced to, and did, pay monies to purchase the Charcoal Toothpastes."), *and* ¶ 178 ("Had Plaintiffs and the Class known the truth about the Charcoal Toothpastes, they would not have purchased the Charcoal Toothpastes or would not have paid a price premium for the

Charcoal Toothpastes."')); and (3) state statutory claims, such as Plaintiffs' GBL Section 349 claim (*compare id*. ¶¶ 169-171 *with id*. ¶ 183 ("Defendant engaged in unfair and/or deceptive conduct by, *inter alia*, making the [] Claims regarding the Colgate Charcoal Toothpastes."), *and* ¶ 187 ("[C]onsumers located in New York have purchased Defendant's Products in reliance on Defendant's false, deceptive, or misleading statements."')) and GBL Section 350 claim (*compare id*. ¶¶ 169-171 *with id*. ¶ 191 ("Defendant has made material, false or misleading statements or representations of fact about the Products.  Specifically, Defendant has literally, impliedly, or by necessary implication made the Safety Claims regarding the Colgate Charcoal Toothpastes.")).

Plaintiffs argue that the unjust enrichment claim is not duplicative because it is brought as an "alternative theory of recovery."  Opp. at 20.  Plaintiffs are correct that unjust enrichment may be pleaded in the alternative; however, "it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to 'explain how their unjust enrichment claim is not merely duplicative of their other causes of action.'" *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (internal citation omitted) (dismissing unjust enrichment claim because it "relies on the same facts as [the] other causes of action in tort"); *see Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 394 n.15 (S.D.N.Y. 2021) (rejecting argument that unjust enrichment claim was brought in the alternative and dismissing claim as duplicative).[12]

---

[12] Plaintiffs' cited cases, *see* Opp. at 20, are distinguishable.  Plaintiffs cite *Henry v. Daytop Vill.*, 42 F.3d 89, 95 (2d Cir. 1994), which involved race and gender discrimination, not an unjust enrichment claim.  Plaintiffs also cite *Burton v. Iyogi, Inc.*, No. 13-cv-06926 (DAB), 2015 WL 4385665, at *10-11 (S.D.N.Y. Mar. 16, 2015) and *Great W. Ins. Co. v. Graham*, No. 18-cv-06249 (VSB), 2020 WL 3415026, at *32-34 (S.D.N.Y. June 22, 2020) – in both cases, neither of which involved false advertising, the court recognized that a claim of "[u]njust enrichment is not available where it simply duplicates, or replaces, a conventional contract or tort claim," but allowed the claims to proceed because, unlike here, they were brought in part as quasi-contract

Courts regularly dismiss unjust enrichment claims brought as an alternative theory when the claims rely on a similar set of facts as the plaintiff's other claims. In *Patellos*, for example, the court dismissed the unjust enrichment claim because the "plaintiffs d[id] not distinguish their unjust enrichment claim from their other claims," which relied on similar fact allegations regarding charcoal toothpaste, including their claims for violations of statutory consumer protection law, breach of express warranty, and fraud. 523 F. Supp. 3d at 536-38; *see, e.g.*, *Dwyer*, 598 F. Supp. 3d at 156-57 (dismissing unjust enrichment claim in false advertising case, since the plaintiff's GBL, express warranty, and fraud claims premised on the same advertising were also dismissed); *Reynolds*, 136 F. Supp. 3d at 525 ("If Plaintiff's GBL and fraud claims are successful, the unjust enrichment claim is duplicative, as all three claims stem from the same underlying allegation."); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 567-68 (S.D.N.Y. 2016) (dismissing unjust enrichment claim because it relied on the same facts as the breach of warranty and other claims); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2014) (dismissing unjust enrichment claims as duplicative of breach of express warranty and GBL claims).

Accordingly, Plaintiffs' unjust enrichment claim is dismissed. *See, e.g.*, *Patellos*, 523 F. Supp. 3d at 537 (dismissing unjust enrichment claim).

---

claims and rested on disputed facts as to whether there was any contract at all. *See also Turk*, 2022 WL 836894, at *14 (false advertising case distinguishing *Henry* and *Burton* because they "presented wholly different factual circumstances and legal claims"); *Zachmann v. Coleman Co. Inc.*, No. 20-cv-09146 (VB), 2022 WL 161480, at *9 (S.D.N.Y. Jan. 18, 2022) (false advertising case finding *Burton* inapplicable where "the allegations supporting plaintiffs' other claims are the same as the allegations supporting their unjust enrichment claim").

## VI. Leave to Amend

Under Rule 15(a)(2), leave to amend a complaint should be freely given "when justice so requires."  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).  Leave "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

Here, Plaintiffs requested leave to amend in a perfunctory one-sentence footnote.  Opp. at 4 n.7.  They did not indicate that they possess facts that would cure the deficiencies identified in Defendant's motion (and previous letter-motion) or otherwise suggest how further amendment would not be futile.  The Court finds that amendment is not warranted under the circumstances. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint.); *Gallop v. Cheney*, 642 F.3d 364, 369-70 (2d Cir. 2011) ("[I]n the absence of any indication that Gallop could – or would – provide additional allegations that might lead to a different result, the District Court did not err in dismissing her claim with prejudice.  As we have had occasion to explain, '[a] counseled plaintiff is not necessarily entitled to a remand for repleading whenever he has indicated a desire to amend his complaint, notwithstanding the failure of plaintiff's counsel to make a showing that the complaint's defects can be cured.'" (quoting *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006))); *see, e.g.*, *Turnipseed*, 2022 WL 657413, at *8 (dismissing false advertising claims with prejudice where the plaintiff "requested leave to file a Second Amended Complaint within the

last sentence of her response in opposition" and "has not otherwise suggested that she is in possession of facts that would cure the deficiencies that Defendants highlighted in the instant motion and that the Court highlighted in this opinion") (collecting cases).

Leave to amend is also not warranted because Plaintiffs already amended their complaint once – after having the benefit of Defendant's premotion letter setting forth grounds for dismissal and the district court's decision in *Housey I* regarding similar allegations – and the Court finds that further amendment would be futile. *See, e.g.*, *Housey II*, at *2 ("[W]e conclude that the district court acted within its discretion in denying Housey's request for leave to amend her already once-amended complaint."); *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware 'of the deficiencies in his complaint when he first amended,' he 'clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.'" (quoting *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (internal brackets removed)); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 168 (S.D.N.Y. 2021) (denying leave to amend false advertising claims because "Plaintiffs have already amended once, after having the benefit of a pre-motion letter from Defendant stating the grounds on which they would move to dismiss" and "a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend"); *Turnipseed*, 2022 WL 657413, at *8 (denying leave to amend where the plaintiff "has already amended once, after having the benefit of a pre-motion letter from Defendant stating the grounds on which it would move to dismiss").

Accordingly, the Court's dismissal is with prejudice.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED and the Complaint is dismissed with prejudice.  The Clerk of Court is respectfully directed to CLOSE this case.

Dated: March 31, 2023
      New York, New York

                                      SO ORDERED.

                                      JENNIFER L. ROCHON
                                      United States District Judge